**Greggory R. DeVORE, Plaintiff and Appellant,**

v.

**IHC HOSPITALS, INC., Defendant and Appellee.**

No. 930474.

Supreme Court of Utah.

Nov. 18, 1994.

Anthony B. Quinn, Mary Anne Q. Wood, Richard G. Wilkins, Salt Lake City, for plaintiff.

David A. Greenwood, Patricia M. Leith, Robert W. Payne, Salt Lake City, for defendant.

DURHAM, Justice:

Plaintiff Greggory R. DeVore, M.D., appeals from a Third District Court order denying his motion to vacate an arbitration award granted in favor of defendant Intermountain Health Care Hospitals ("IHCH").[1] Dr. DeVore filed the motion under section 78–31a–14 of the Utah Code.[2] We affirm and remand.

This case arises out of the attempts of IHCH and the School of Medicine at the University of Utah to establish a cooperative perinatology program. As head of IHCH's perinatology service, Dr. DeVore played a large role in the negotiations with the School of Medicine. Nevertheless, IHCH asked Dr. DeVore to resign soon after the parties reached agreement. Dr. DeVore accepted and signed a letter of resignation that IHCH had prepared for him.

---

**1.** Pursuant to the parties' arbitration agreement, the district court also granted IHCH its taxable costs and reasonable attorney fees.

**2.** Section 78–31a–14 states in pertinent part:

(1) Upon motion to the court by any party to the arbitration proceeding for vacation of the award, the court shall vacate the award if it appears:

(a) the award was procured by corruption, fraud, or other undue means;

(b) an arbitrator, appointed as neutral, showed partiality, or an arbitrator was guilty of misconduct that prejudiced the rights of any party;

. . . .

(2) A motion to vacate an award shall be made to the court within 20 days after a copy of the award is served upon the moving party, or if predicated upon corruption, fraud, or other undue means, within 20 days after the grounds are known or should have been known.

About six months after his July 1990 resignation, Dr. DeVore filed a claim for wrongful employment termination against IHCH. Pursuant to the employment contract, the parties submitted the claim to arbitration under the Utah Arbitration Act, Utah Code Ann. §§ 78–31a–1 to –20, and the Commercial Arbitration Rules of the American Arbitration Association. The parties selected former federal bankruptcy judge Ralph R. Mabey to preside and stipulated to an order providing that, with the exception of an oral explanation of Mabey's ruling, the proceedings would be closed and unrecorded.

■ During the May 1991 proceeding, Dr. DeVore introduced evidence regarding a 1988 meeting with Dr. Cecil O. Samuelson, then Dean of the School of Medicine.[3] Dr. DeVore testified that during the meeting, Dr. Samuelson questioned Dr. DeVore's capabilities on both a personal and a professional level. Dr. DeVore also presented several letters written to, sent from, or referencing Dr. Samuelson. The letters dealt primarily with the state of negotiations between IHCH and the School of Medicine and occasionally mentioned Dr. DeVore.[4]

At the conclusion of the hearing, Mabey ruled in favor of IHCH. Mabey found that (1) IHCH had not breached, nor anticipatorily breached, the employment contract; (2) Dr. DeVore resigned voluntarily rather than changing his billing and treatment practices; and (3) IHCH had valid grounds on which to terminate Dr. DeVore for cause. IHCH subsequently moved to confirm the award in district court, and Dr. DeVore simultaneously moved to vacate. In January 1992, the district court confirmed the award.

Nearly one year later, on December 5, 1992, Dr. DeVore received a telephone call

3. After his 1988 meeting with Dr. DeVore but prior to the arbitration hearing, Dr. Samuelson left the School of Medicine and accepted a position as senior vice president for medical affairs with Intermountain Health Care ("IHC"), IHCH's parent corporation.

4. On appeal, the parties dispute the importance of the evidence relating to Dr. Samuelson, as well as the strategy behind Dr. DeVore's decision to introduce it. Dr. DeVore contends that he presented the evidence to demonstrate that IHCH never intended to honor his employment contract and that his dismissal was wrongfully orchestrated by IHCH and School of Medicine officials, especially Dr. Samuelson. According to Dr. DeVore, he submitted the testimony because it exemplified the "irrationally hostile and critical views of me held by Dr. Samuelson and other University of Utah physicians." Dr. DeVore further asserts that the letters he introduced demonstrate the collaboration between IHCH and the School of Medicine in his termination, as well as Dr. Samuelson's major role in the affair.

IHCH, on the other hand, argues that Dr. DeVore never proffered a conspiracy theory at the arbitration hearing. Rather, IHCH contends, Dr. DeVore introduced the evidence to counter IHCH's argument that it had cause to terminate Dr. DeVore under the employment contract. Dr. DeVore's employment contract defined "cause" as, among other things, a determination that Dr. DeVore's professional performance and relationships with IHCH or School of Medicine physicians inhibited the cooperative perinatology service or its collegial atmosphere. IHCH claims that Dr. DeVore submitted the evidence regarding Dr. Samuelson as an example of a past conflict with a School of Medicine physician which had been resolved and no longer threatened the program's collegial atmosphere. Thus, IHCH concludes that Dr. DeVore is attempting to take advantage of the closed and unrecorded arbitration proceeding by recharacterizing relatively innocuous evidence in a sinister and conspiratorial light.

While both sides produce affidavits in support of their respective positions, we find them inapposite. Our charge is not to reconstruct the underlying arbitration proceeding based on self-serving affidavits but to reach a decision based upon the record. *Robinson & Wells, P.C. v. Warren*, 669 P.2d 844, 846 (Utah 1983). Our review of the record casts substantial doubt on Dr. DeVore's version of events. For example, neither Dr. Samuelson's name nor any mention of an IHCH/School of Medicine conspiracy theory appears in Dr. DeVore's amended demand for arbitration or Mabey's oral explanation of his ruling. Furthermore, Dr. DeVore's own prearbitration witness list summarized Dr. DeVore's expected testimony as follows: (1) "[m]atters concerning negotiations with the University of Utah for a combined perinatal program with IHCH, difficulties with those negotiations which allegedly related to personal conflicts between DeVore and various University physicians, and to the resolution of those conflicts"; and (2) "[m]atters reflecting that criticisms of DeVore had diminished substantially by the first part of 1990, well prior to the negotiation of the July 1, 1990 contract[.]"

Accordingly, we accept the point that the evidence was admitted and may have portrayed Dr. DeVore in a negative light. We do not, however, rely on Dr. DeVore's characterization of the evidence as demonstrating Dr. Samuelson's significant role in an alleged conspiracy between IHCH and the School of Medicine.

from a colleague on an unrelated matter. During their conversation, the subject of the arbitration arose, and Dr. DeVore mentioned that Mabey had presided. The colleague indicated that he knew Mabey because he and Mabey had served together as bishops in The Church of Jesus Christ of Latter-day Saints ("LDS Church") from about 1977 to 1980. Dr. DeVore's colleague further indicated that they had served under the same stake president, Dr. Cecil O. Samuelson.[5]

Following this discovery, on December 24, 1992, Dr. DeVore filed a motion in the Third District Court to vacate the arbitration award. *See* Utah Code Ann. § 78–31a–14. In essence, Dr. DeVore complained that following his introduction of the evidence regarding Dr. Samuelson, Mabey was aware that Dr. Samuelson disapproved of Dr. DeVore both personally and professionally. Dr. DeVore theorized that having served as a bishop under Dr. Samuelson, Mabey had likely developed an enduring love, admiration, and respect for Dr. Samuelson and his views. Thus, Dr. DeVore concluded that Mabey's failure to disclose his prior ecclesiastical relationship with Dr. Samuelson, an individual who thought negatively of Dr. DeVore and whose views Mabey highly regarded, had impermissibly tainted the arbitration proceeding and created at least the appearance of partiality or misconduct within the meaning of section 78–31a–14(1)(b). Dr. DeVore alleged that IHCH's failure to disclose the relationship also produced at least the appearance that the award had been procured by undue means in violation of section 78–31a–14(1)(a).

IHCH responded by challenging both the timeliness and the sufficiency of Dr. DeVore's section 78–31a–14 motion. Pointing to section 78–31a–14(2), IHCH argued that an aggrieved party has only twenty days following service of a copy of the award to challenge an arbitrator's ruling based upon partiality. Thus, IHCH concluded that Dr. DeVore's motion, filed almost one year following service, was time barred. With respect to the sufficiency of Dr. DeVore's motion, IHCH claimed that (1) Dr. Samuelson had no involvement in the arbitration proceeding or IHCH's relationship with Dr. DeVore, (2) Dr. DeVore had failed to demonstrate that Mabey "showed partiality" or engaged in misconduct prejudicing Dr. DeVore's rights, and (3) IHCH could not have procured the award by undue means because it did not introduce the evidence regarding Dr. Samuelson and, in any event, had no reason to know, let alone disclose, the prior ecclesiastical relationships of its corporate parent's senior vice presidents.

After a hearing and oral argument, the district court denied Dr. DeVore's motion. The court found that (1) Mabey and Dr. Samuelson had had a "significant and important" ecclesiastical relationship from 1977 to 1980, eleven years before the arbitration; (2) there was no evidence that the relationship had continued in any substantial way since that time; (3) Dr. Samuelson was not a party or an agent or a representative of a party to Dr. DeVore's terminated employment contract; (4) Dr. Samuelson was not a party or employed by a party to the arbitration; (5) Dr. Samuelson did not testify at the arbitration, nor was he deposed or identified as a witness by either party; (6) Dr. Samuelson was never involved in any employment decisions regarding Dr. DeVore and had no involvement with the arbitration proceeding. Thus, the court concluded that Dr. DeVore had failed to establish that the award "was 'procured by corruption, fraud or undue means,' or that the arbitrator 'showed partiality' or that the arbitrator 'was guilty of misconduct that prejudiced the rights of any party.'"[6] Dr. DeVore appeals.[7]

---

5. The LDS Church is divided into geographic congregations called "wards." Several wards combine to form a "stake." A bishop is the presiding spiritual leader of a ward. A stake president, in turn, is the presiding spiritual leader of a stake.

6. The district court neglected to directly address IHCH's timeliness challenge. However, by proceeding to the merits of Dr. DeVore's claim, the district court ruled *sub silentio* that the motion was timely filed under section 78–31a–14.

7. On appeal, Dr. DeVore asserts that Mabey and/or IHCH's conduct violated sections 78–31a–14(1)(a), 78–31a–14(1)(b), and 78–31a–14(1)(d). Dr. DeVore, however, failed to raise section 78–31a–14(1)(d) before the district court. Absent exceptional circumstances which do not exist

■ We note at the outset that the policy of our law favors arbitration as a speedy and inexpensive method of adjudicating disputes. *Utility Trailer Sales of Salt Lake, Inc. v. Fake,* 740 P.2d 1327, 1329 (Utah 1987); *Robinson & Wells, P.C. v. Warren,* 669 P.2d 844, 846 (Utah 1983). Pursuant to that policy, judicial review of arbitration awards should not be pervasive in scope or encourage repetitive adjudications but should be limited to the statutory grounds and procedures for review. *Id.* As a general rule, an arbitration award will not be disturbed on account of irregularities or informalities in the proceeding or because the court does not agree with the award as long as the proceeding was fair and honest and the substantial rights of the parties were respected. *Utility Trailer Sales,* 740 P.2d at 1329; *Bivans v. Utah Lake Land, Water & Power Co.,* 53 Utah 601, 174 P. 1126, 1130 (1918).

Bearing these fundamental arbitration principles in mind, we emphasize that the central issue before us is whether the district court properly denied Dr. DeVore's section 78–31a–14 motion to vacate the award. Reviewing the district court's determination requires us to analyze three interrelated questions. First, did the district court err in ruling *sub silentio* that Dr. DeVore had filed a timely motion under section 78–31a–14? Second, if Dr. DeVore's motion was timely, what evidentiary standard does section 78–31a–14(1)(b) require? Need a movant establish facts sufficient to prove actual partiality or bias on the arbitrator's part, or does the statute merely require a movant to demonstrate the appearance of partiality? Finally, does Dr. DeVore's claim merit relief under the evidentiary standard required by section 78–31a–14(1)(b)?

### Timeliness of Dr. DeVore's Section 78–31a–14 Motion

■ We turn first to the question of whether the district court erred in ruling that Dr. DeVore had timely filed a motion under section 78–31a–14. The proper construction of section 78–31a–14 is a question of law. *State v. Larsen,* 865 P.2d 1355, 1357 (Utah 1993); *State v. James,* 819 P.2d 781, 796 (Utah 1991). Accordingly, we grant no particular deference to the district court's conclusions but review them for correctness. *Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990).

■ When faced with a question of statutory construction, we look first to the plain language of the statute. *Larsen,* 865 P.2d at 1357; *Schurtz v. BMW of N.Am., Inc.,* 814 P.2d 1108, 1112 (Utah 1991); *Bonham v. Morgan,* 788 P.2d 497, 500 (Utah 1989) (per curiam). Only when we find ambiguity in the plain language of the statute need we seek guidance from legislative history and relevant policy considerations. *Schurtz,* 814 P.2d at 1112; *Bonham,* 788 P.2d at 500. Section 78–31a–14(2) states:

> A motion to vacate an award shall be made to the court within 20 days after a copy of the award is served upon the moving party, or if predicated upon corruption, fraud, or other undue means, within 20 days after the grounds are known or should have been known.

Utah Code Ann. § 78–31a–14(2). Thus, section 78–31a–14(2) contains two independent timeliness standards, a twenty-day time bar following service of the award upon the moving party and a twenty-day tolling provision for motions predicated upon corruption, fraud, or undue means.

Dr. DeVore acknowledges that section 78–31a–14(2)'s twenty-day time bar is designed to further the goal of arbitration as a speedy, inexpensive, and final alternative to adjudication by a court. However, he argues that the legislature also included the tolling provision because it realized that certain statutorily defined improprieties occasioned by fraud, corruption, or undue means might not come to light until well after the twenty-day time bar had expired. Thus, Dr. DeVore asserts

here, we will not consider issues raised for the first time on appeal. *Ong Int'l, Inc. v. 11th Ave. Corp.,* 850 P.2d 447, 455 (Utah 1993); *State v. Smith,* 866 P.2d 532, 533 (Utah 1993).

We likewise need not reach Dr. DeVore's section 78–31a–14(1)(a) argument. Regardless of

who Dr. DeVore claims should have disclosed the relationship, today's decision makes clear that the failure to do so does not warrant vacation under the statute.

that his motion was timely and appropriate because (1) it was filed within twenty days of his discovery of Mabey's prior ecclesiastical relationship with Dr. Samuelson, and (2) both Mabey's failure to disclose that relationship and the resulting biased ruling constituted "undue means" within the meaning of section 78–31a–14(2).

IHCH, on the other hand, claims that section 78–31a–14(2)'s tolling provision refers only to section 78–31a–14(1)(a), which states that an award shall be vacated if "the award was procured by fraud, corruption, or other undue means." *Id.* § 78–31a–14(1)(a). Thus, in IHCH's view, all other section 78–31a–14(1) motions are barred unless brought within twenty days after the movant received service of a copy of the award. Accordingly, IHCH contends that Dr. DeVore's motion was time barred because it was based on Mabey's alleged bias or partiality, a section 78–31a–14(1)(b) claim.

We conclude that the plain language of section 78–31a–14 resolves this question of first impression. Section 78–31a–14(1) authorizes a court to vacate an arbitration award if

> (a) the award *was procured* by corruption, fraud, or other undue means;
>
> (b) an arbitrator, appointed as a neutral, *showed partiality,* or an arbitrator *was guilty of misconduct* that prejudiced the rights of any party;
>
> (c) the arbitrators *exceeded* their powers;
>
> (d) the arbitrators *refused to postpone the hearing* upon sufficient cause shown, *refused to hear evidence* material to the controversy, or otherwise *conducted the hearing* to the substantial prejudice of the rights of a party; or
>
> (e) *there was no arbitration agreement* between the parties to the arbitration proceeding.

*Id.* § 78–31a–14(1) (emphasis added). The legislature's decision to use the emphasized language, as well as the actual grounds delineated, demonstrates that section 78–31a–14(1) is designed to provide relief for arbitration improprieties which are evident to a party by the close of the proceeding or upon receiving a copy of the award. For example, a party will generally know by the close of the proceeding or upon receiving a copy of the award whether it believes the arbitrator "showed partiality." *Id.* § 78–31a–14(1)(b). Similarly, a party will generally know by the end of the proceeding or upon receiving a copy of the award whether it believes that "the award was procured by corruption, fraud, or other undue means," *id.* § 78–31a–14(1)(a), or that an arbitrator "refused to postpone the hearing upon sufficient cause shown," *id.* § 78–31a–14(1)(d), or that "there was no arbitration agreement between the parties to the arbitration proceeding." *Id.* § 78–31a–14(1)(e).

Section 78–31a–14(1), therefore, works in tandem with section 78–31a–14(2)'s twenty-day time bar to assure that arbitration proceedings remain speedy, inexpensive, and final. In other words, section 78–31a–14(1) provides relief for certain defined improprieties that are evident to a party by the close of the proceeding or upon receipt of the award, and section 78–31a–14(2)'s twenty-day time bar ensures that parties will not bring belated challenges based upon information known, or which reasonably should have been known, before the expiration of the twenty-day time bar.

Section 78–31a–14(2)'s tolling provision, however, must be read independently from the combined effect of section 78–31a–14(1) and section 78–31a–14(2)'s twenty-day time bar. While the tolling provision expressly refers to "corruption, fraud, and other undue means," we think that phrase encompasses arbitration improprieties of which the movant did not know and could not reasonably have known by the close of the proceeding or within twenty days after receiving a copy of the award. Section 78–31a–14(2)'s tolling provision, therefore, is essentially a catch-all mechanism designed to redress those statutorily defined improprieties which come to light only after the twenty-day bar has expired.

 We emphasize, however, that a party may not use the tolling provision to overturn the award on grounds other than those listed in section 78–31a–14(1) or to retry the merits of the arbitration. *Utility*

*Trailer Sales of Salt Lake, Inc. v. Fake,* 740 P.2d 1327, 1329 (Utah 1987). Nor may a court use the provision to overturn an award with which it simply disagrees. *Id.; Bivans v. Utah Lake Land, Water & Power Co.,* 53 Utah 601, 174 P. 1126, 1130 (1918). A motion filed under the tolling provision must set forth a claim expressly invoking one or more of the grounds outlined in section 78–31a–14(1). *Robinson & Wells,* 669 P.2d at 846 ("[J]udicial review of arbitration awards ... should be strictly limited to the statutory grounds and procedures for review."). For example, a motion filed under the tolling provision which alleges that the opposing party bribed the arbitrator falls under sections 78–31a–14(1)(a) ("the award was procured by corruption, fraud, or other undue means"), 78–31a–14(1)(b) ("an arbitrator, appointed as neutral, showed partiality, or an arbitrator was guilty of misconduct that prejudiced the rights of any party"), or 78–31a–14(1)(d) ("the arbitrator[ ] ... conducted the hearing to the substantial prejudice of the rights of a party").

Applying this construction to the instant case reveals that Dr. DeVore timely filed his section 78–31a–14 motion. Upon receiving a copy of the arbitration award, Dr. DeVore did not know and could not reasonably have known of Mabey's prior ecclesiastical relationship with Dr. Samuelson. Indeed, he did not learn of the relationship until nearly one year later when a colleague mentioned it to him in passing. Once he discovered the relationship's existence, Dr. DeVore properly filed a motion to vacate "predicated upon corruption, fraud, undue means, within 20 days after the grounds are known or should have been known." Utah Code Ann. § 78–31a–14(2). That motion, which contained allegations regarding Mabey's failure to disclose his prior ecclesiastical relationship with Dr. Samuelson, legitimately invoked the grounds outlined in section 78–31a–14(1)(b). *See Drinane v. State Farm Mut. Auto. Ins. Co.,* 222 Ill.App.3d 805, 165 Ill.Dec. 231, 234–

35, 584 N.E.2d 410, 413–14 (1991) (considering as "undue means" an arbitrator's failure to disclose a relationship which movant claimed biased arbitrator), *aff'd,* 153 Ill.2d 207, 180 Ill.Dec. 104, 606 N.E.2d 1181 (1992).

### Evidentiary Standard Required by Section 78–31a–14(1)(b)

▮▮▮▮ Having determined that Dr. De-Vore filed his motion in a timely fashion, we next address section 78–31a–14(1)(b)'s proper evidentiary standard. The articulation of the proper standard to be used by courts in addressing section 78–31a–14(1)(b) claims is a question of law. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994) ("[A]ppellate courts have traditionally been seen as having the power and duty to say what the law is and to ensure that it is uniform throughout the jurisdiction.").

▮▮▮▮ The parties disagree as to whether section 78–31a–14(1)(b) requires a court to vacate an award upon merely the *appearance* of partiality or whether the movant must demonstrate *actual* partiality. Focusing on the phrase "the court *shall* vacate the award *if it appears*" that any of the enumerated violations have occurred, Utah Code Ann. § 78–31a–14(1) (emphasis added), Dr. De-Vore argues that the plain language of section 78–31a–14 demands that we adopt an appearance standard. In other words, Dr. DeVore asserts that an arbitrator must disclose all relationships which present even the appearance of partiality and the failure to do so requires the reviewing court to vacate the award. In addition, Dr. DeVore urges us to follow numerous federal and state cases, including *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), and *School District of Spooner v. Northwest United Educators,* 136 Wis.2d 263, 401 N.W.2d 578 (1987), which, he claims, have adopted an appearance-of-partiality standard.[8]

8. Dr. DeVore also urges us to rely on the American Arbitration Association's guidelines, which require an arbitrator to disclose any interest or relationship "likely to affect impartiality or which might create an appearance of partiality or bias." Code of Ethics for Arbitrators in Commercial Disputes Canon II (1977). We note that

Utah law, not the rules of the American Arbitration Association, governs this case. Dr. DeVore's employment contract with IHCH expressly states that the agreement is governed by the Utah Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association "to the

IHCH asserts that phrases such as "an arbitrator ... *showed partiality*, or an arbitrator *was guilty of misconduct* that prejudiced the rights of any party," Utah Code Ann. § 78–31a–14(1)(b), reveal that the legislature intended to adopt an actual partiality standard. In other words, IHCH claims that Dr. DeVore must demonstrate facts sufficient to prove that Mabey's relationship with Dr. Samuelson actually biased Mabey toward IHCH. IHCH also points out that the cases cited by Dr. DeVore construe an "evident partiality" standard[9] rather than Utah's "showed partiality" standard. IHCH further argues that (1) even those evident partiality cases which Dr. DeVore claims have adopted an appearance standard are ultimately inconclusive on the point; and (2) in any event, the vast majority of evident partiality cases, such as *Morelite Construction Corp. v. New York City District Council of Carpenters Benefit Funds*, 748 F.2d 79 (2d Cir.1984), and *Merit Insurance Co. v. Leatherby Insurance Co.*, 714 F.2d 673 (7th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983), have rejected an appearance standard in favor of a more definite showing of bias.

We are unpersuaded by either party's arguments. In our view, Dr. DeVore's plain language theory fails because section 78–31a–14(1)'s "if it appears" language was not intended to incorporate an appearance of partiality standard into the statute. Rather, the phrase logically means "if it appears to the court" or "if it appears from the record." While we think the clear import of the language requires such a reading, there are two additional supporting considerations. First, the Utah Arbitration Act twice uses the phrase "if it appears" in the context of a *court* reviewing an arbitration award. *See* Utah Code Ann. §§ 78–31a–14(1) (vacation of award by court), 78–31a–15(1) (modification of award by court). The phrase does not appear in a similar provision authorizing *arbitrators* to modify their own awards. *See id.* § 78–31a–13. Thus, the "if it appears" language merely reflects the distinction between a court reviewing an arbitration award and arbitrators reviewing their own award.

---

extent that such rules are not in conflict with such law."

In addition, we note that Dr. DeVore invokes article I, section 4 of the Utah Constitution in support of his position. Specifically, he points to the article's admonition that no church shall "dominate the State or interfere with its functions" and argues that an appearance standard is necessary to prevent the ecclesiastical structure of the LDS Church from violating that constitutional command. Dr. DeVore warns that because the LDS Church is directed by a predominately lay clergy, "claimants in an arbitration hearing will often have no way of knowing whether the individuals deciding their cases have close ecclesiastical ties with hearing participants." Thus, "arbitration participants may justifiably wonder whether an unseen religious hierarchy is influencing arbitral outcomes" and interfering with the state's judiciary through the confirmation process.

Setting aside the fact that Dr. DeVore raises this argument for the first time on appeal, we see little merit in his position. Article I, section 4's domination and interference clause is "a particularistic command directed at the Mormon Church *as an institution.*" *Society of Separationists, Inc. v. Whitehead*, 870 P.2d 916, 939 (Utah 1993). There is no evidence in the record, nor does Dr. DeVore assert, that the LDS Church, as an institution, made any effort whatsoever to effect the outcome of this or any other arbitration proceeding. Nor is there any evidence that

the arbitration-court confirmation process so unites the LDS Church and the state "that the two function in tandem on an ongoing basis." *Id.*

Furthermore, if parties to an arbitration are truly concerned about the impact of a lay clergy and an "unseen religious hierarchy," they are free to structure their arbitration in such a manner as to avoid the problem. For example, parties to an arbitration might expressly inquire as to their arbitrator's religion and even require that he or she disclose all ecclesiastical relationships with any person having anything to do with the arbitration.

9. The "evident partiality" standard seems to have its origins in two sources, the Uniform Arbitration Act and the United States Arbitration Act. The Uniform Arbitration Act states, "Upon application of a party, the court shall vacate an award where ... [t]here was *evident partiality* by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party." Unif. Arbitration Act § 12 (1990) (emphasis added). The United States Arbitration Act provides that "the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration ... [w]here there was *evident partiality* or corruption in the arbitrators, or either of them." 9 U.S.C. § 10 (1970) (emphasis added).

Second, Dr. DeVore's argument makes little sense when carried to its logical conclusion. If section 78–31a–14(1)'s "if it appears" language truly incorporates an appearance standard into the statute, that standard must apply equally to section 78–31a–14(1)(a) through (e). While an appearance standard works arguably well with section 78–31a–14(1)(a) and (b),[10] the remaining subsections simply are not susceptible to such a standard. For example, how can either the arbitrator or the parties give the *appearance* that there was no arbitration agreement between the parties to the arbitration proceeding? *Id.* § 78–31a–14(1)(e).

Section 78–31a–15 further demonstrates the fallacy of Dr. DeVore's plain language theory. That provision states in pertinent part:

(1) Upon motion made within 20 days after a copy of the award is served upon the moving party, the court shall modify or correct the award *if it appears:*

(a) there was an evident miscalculation of figures or an evident mistake in the description of any person or property referred to in the award;

(b) the arbitrators' award is based on a matter not submitted to them, if the award can be corrected without affecting

the merits of the award upon the issues submitted; or

(c) the award is imperfect as to form. Utah Code Ann. § 78–31a–15(1)(a)–(c) (emphasis added). Under Dr. DeVore's theory, the statute's "if it appears" language would require an appearance standard. Yet how can an award give the *appearance* of being imperfect as to form? *Id.* § 78–31a–15(1)(c). Dr. DeVore's statutory theory simply fails in application.[11]

On the other hand, we are also unconvinced by IHCH's plain language argument. Again, IHCH claims that section 78–31a–14(1)(b)'s language ("an arbitrator ... showed partiality" or "was guilty of misconduct") indicates that the statute requires the movant to prove facts sufficient to establish actual partiality and/or misconduct. Although IHCH makes a plausible argument, it gives no reason why a term such as "showed partiality" mandates that a court apply a proof-of-actual-bias standard. Indeed, numerous other federal and state courts have adopted some type of reasonableness standard when presented with this issue. *See, e.g., Apperson v. Fleet Carrier Corp.,* 879 F.2d 1344, 1358 (6th Cir.1989) (reasonable person standard), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 533 (1990); *Morelite,* 748 F.2d at 84 (party alleging bias must

---

**10.** For example, we can conceive of situations in which an award may *appear* to have been procured by corruption, fraud, or undue means, Utah Code Ann. § 78–31a–14(1)(a), or where an arbitrator's acts give the *appearance* of partiality or the *appearance* of misconduct, *id.* § 78–31a–14(1)(b).

**11.** Because we base our rejection of Dr. DeVore's position upon the plain language of the statute, we need not consider the case law from other jurisdictions that he cites in support of an appearance-of-partiality standard. We do note, however, that while at least one state had adopted an appearance of partiality standard, *see School Dist. of Spooner v. Northwest,* 136 Wis.2d 263, 401 N.W.2d 578, 581 (1987), Dr. DeVore's reliance on the United States Supreme Court's decision in *Commonwealth Coatings Corp. v. Continental Casualty Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), is misplaced.

Justice Black's lead opinion, which arguably adopted an appearance-of-partiality standard, captured only three other votes. Justice White, writing for himself and Justice Marshall, con-

curred in the result but effectively limited Justice Black's opinion. Justice White wrote, "The Court does not decide today that arbitrators are to be held to the standards of judicial decorum of Article III judges, or indeed of any judges." *Id.* at 150, 89 S.Ct. at 340 (White & Marshall, JJ., concurring). Justice White further concluded that an arbitrator "cannot be expected to provide the parties with [a] complete and unexpurgated business biography. But it is enough for present purposes to hold, as the Court does, that where an arbitrator has a substantial interest in a firm which had done more than trivial business with a party, that fact must be disclosed." *Id.* at 151–52, 89 S.Ct. at 340.

In addition, as a matter of policy, we think an appearance-of-partiality standard sets an impractically low threshold, especially in a small state like Utah. Indeed, "to disqualify any arbitrator who had professional dealings with one of the parties (to say nothing of a social acquaintanceship) would make it impossible, in some circumstances, to find a qualified arbitrator at all." *Morelite Constr. Corp. v. N.Y.C. Dist. Council Carpenters Benefit Funds,* 748 F.2d 79, 83 (2d Cir. 1984).

demonstrate that reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration); *San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.*, 28 Cal.App.3d 556, 104 Cal.Rptr. 733 (1972) (party alleging bias must establish facts that create reasonable impression of bias); *Vincent Builders Inc. v. American Appliance Sys., Inc.*, 16 Conn.App. 486, 547 A.2d 1381 (1988) (reasonable person standard), *cert. denied,* 210 Conn. 809, 556 A.2d 608 (1989); *Gordon Sel–Way, Inc. v. Spence Bros., Inc.*, 177 Mich.App. 116, 440 N.W.2d 907 (1989) (reasonable impression of bias); *Dowd v. First Omaha Secs. Corp.*, 242 Neb. 347, 495 N.W.2d 36 (1933); *St. Paul Ins. Co. v. Lusis,* 6 Wash.App. 205, 492 P.2d 575 (1971) (reasonable inference of bias).[12] *But see Schmitz v. Zilveti,* 20 F.3d 1043 (9th Cir.1994) (adopting reasonable-impression-of-partiality standard in failure to disclose cases but equating that standard with appearance-of-partiality standard).

In addition, strong policy considerations weigh heavily against adopting an actual partiality standard. As the Court of Appeals for the Second Circuit recognized in *Morelite,* there is a sense in which the integrity of the judiciary is at stake:

> Were we to lend our imprimatur to an award grounded in fraud or bias, the sense of fairness that society rightfully demands of its judiciary would be sadly diminished. For this reason, we cannot countenance the promulgation of a standard for partiality as insurmountable as "proof of actual bias".... Bias is always difficult, and indeed often impossible, to "prove." Unless an arbitrator publicly announces his partiality, or is overheard in a moment of private admission, it is difficult to imagine how "proof" would be obtained. Such a standard, we fear, occasionally would require that we enforce awards that are clearly repugnant to our sense of fairness, yet do not yield "proof" of anything.

748 F.2d at 84. We agree with the *Morelite* court. Adopting an actual partiality standard could compromise the integrity of the judiciary and undermine arbitration as an alternative dispute mechanism. Thus, while the language of section 78–31a–14(1) may be equally susceptible to either an actual or a reasonableness standard, we conclude that both the arbitration process and the judiciary will be better served by the flexibility inherent in a reasonableness standard. Accordingly, we hold that a court shall vacate an award under section 78–31a–14(1)(b) if a reasonable person would conclude that an arbitrator, appointed as neutral, showed partiality or was guilty of misconduct that prejudiced the rights of any party. Furthermore, the burden of proof falls on the movant, and the evidence of partiality must be certain and direct, not remote, uncertain, or speculative.

### The Merits of Dr. DeVore's Section 78–31a–14 Motion

Having determined section 78–31a–14's proper evidentiary standard, we now address the question of whether the district court erred in denying Dr. DeVore's motion to vacate. We note that this issue presents a question of law which we review for correctness. Because we proceed upon the same record that the district court had before it, we accord no deference to the district court's legal conclusions. However, we review the district court's factual findings under a clearly erroneous standard.

Dr. DeVore frames his argument as follows: (1) For approximately two to three years, Mabey served as a bishop under Stake President Samuelson; (2) LDS Church bishops generally have great and enduring love, admiration, and respect for their stake presidents; (3) during the arbitration hearing, Dr. Samuelson was portrayed as having a negative opinion of Dr. DeVore and a positive opinion of other physicians testifying on behalf of IHCH; and (4) Mabey's failure to disclose his prior ecclesiastical relationship with Dr. Samuelson, combined with his exposure to Dr. Samuelson's views and his likely continuing respect for those views, showed partiality and/or constituted misconduct in violation of section 78–31a–14(1)(b). In es-

**12.** Although IHCH makes much of the fact that these cases construe an evident partiality standard, rather than section 78–31a–14(1)(b)'s showed partiality standard, we do not see any meaningful distinction between the two terms.

sence, therefore, Dr. DeVore argues that a reasonable person would conclude that we must overturn the arbitration award because Mabey was exposed to Dr. Samuelson's opinions, opinions which Mabey may have held in the highest regard, and yet continued to preside over the arbitration without disclosing that prior relationship. In support of this position, Dr. DeVore presents affidavits which attest to the enduring love, respect, and mutual admiration typically arising from the relationship between a bishop and a stake president. Dr. DeVore also relies heavily on the district court's characterization of the relationship as "significant and important."

Our review of the record indicates that a reasonable person would not conclude that Mabey's failure to disclose his prior ecclesiastical relationship with Dr. Samuelson showed partiality to IHCH or constituted misconduct that prejudiced Dr. DeVore's rights. *See id.* § 78–31a–14(1)(b). We base our conclusion on several factors. To begin, although Mabey may have had a "significant and important" relationship with Dr. Samuelson from approximately 1977 to 1980, *that relationship ended eleven years prior to the arbitration.* Despite the affidavits produced by Dr. DeVore, there is no evidence in the record that this particular relationship has continued in any substantial way since 1980. Furthermore, there is no evidence in the record that Mabey continued to be, if indeed he ever was, influenced by his alleged love, respect, and admiration for Dr. Samuelson. The affidavits submitted by Dr. DeVore contain, at best, remote, uncertain, and speculative statements. They detail the nature of hypothetical relationships between bishops and stake presidents and, in one case, the nature of Dr. Samuelson's relationship with another bishop. A reasonable person would not regard them as establishing certain and direct evidence of Mabey's enduring allegiance to Dr. Samuelson or any resultant partiality to IHCH.

 Nor are we persuaded by Dr. DeVore's highly speculative implication that

Mabey, still affected by his relationship with Dr. Samuelson, lost his ability to act impartially and produced a biased decision which "conform[ed] exactly to Dr. Samuelson's strongly critical opinions of Dr. DeVore." There is no evidence in the record that Mabey did anything but use his best judgment to decide the issues of fact and law before him. That Mabey found IHCH's arguments more persuasive than Dr. DeVore's is not evidence of bias. Indeed, neither an arbitrator's consistent reliance on the winning party's evidence nor the arbitrator's conclusions in the winning party's favor establish partiality. *Pompano–Windy City Partners, Ltd. v. Bear Stearns & Co.,* 794 F.Supp. 1265, 1278–79 (S.D.N.Y.1992).

In addition, Dr. DeVore's assertions notwithstanding, Dr. Samuelson played, at best, a trivial or tangential role in the arbitration proceeding. As the district court correctly noted, (1) Dr. Samuelson was not a party or an agent or a representative of a party to Dr. DeVore's terminated employment contract; (2) Dr. Samuelson did not testify at the arbitration, nor was he deposed or identified as a witness by either party; and (3) Dr. Samuelson did not help orchestrate Dr. DeVore's termination from IHCH, nor did he influence the arbitration proceeding in any manner. Dr. Samuelson's name merely arose in connection with several documents submitted to the arbitrator and through testimony given by Dr. DeVore.[13] While courts have vacated awards based upon an arbitrator's failure to disclose a relationship with a nonparty, *see, e.g., San Luis Obispo Bay Properties, Inc. v. Pacific Gas & Elec. Co.,* 28 Cal.App.3d 556, 104 Cal.Rptr. 733 (1972), a reasonable person would not conclude that section 78–31a–14 required Mabey to disclose his relationship with an individual like Dr. Samuelson, who played an insignificant and tangential role in the proceedings.

On the basis of the foregoing rationale, we affirm the district court's ruling denying Dr. DeVore's section 78–31a–14 motion to vacate the arbitration award and granting IHCH its taxable costs and reasonable attorney fees.

---

**13.** Both parties agree that Dr. DeVore's testimony regarding Dr. Samuelson took place during the first two days of the ten-day arbitration proceeding. Indeed, IHCH asserts, and Dr. DeVore does not dispute, that the testimony lasted from five to ten minutes.

Pursuant to paragraph 13B of the parties' arbitration agreement, we further award IHCH its taxable costs and reasonable attorney fees incurred on this appeal in an amount to be determined by the district court on remand.

ZIMMERMAN, C.J., and STEWART, Associate C.J., and RUSSON, J., concur.

HOWE, J., concurs in the result.