2012 UT 56

**WESTGATE RESORTS, LTD.,**
**Defendants, Counterclaimant,**
**and Appellee**

v.

**Shaun S. Adel and CONSUMER PRO-**
**TECTION GROUP, LLC, Plaintiff,**
**Counterdefendant, and Appellant.**

**No. 20101017.**

Supreme Court of Utah.

Sept. 7, 2012.

Michael D. Zimmerman, Linda M. Jones, Troy L. Booher, Salt Lake City, Richard W. Epstein, Michael Marder, Ft. Lauderdale, FL, for appellee.

L. Rich Humpherys, Alain C. Balmanno, Karra J. Porter, Scot A. Boyd, Salt Lake City, for appellant.

Associate Chief Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 This appeal is rooted in a dispute over an arbitration award. Westgate Resorts argued that the award should be vacated because one of the arbitrators did not disclose that he was first cousins with one of the shareholders in the opposing counsel's law firm. The district court granted Westgate's motion to vacate arbitration award. We reverse.

1. The facts of this underlying case may be read in the companion case also issued today, *Westgate v. CPG*, 2012 UT 55, 285 P.3d 1219.

## BACKGROUND

¶ 2 Westgate Resorts filed an initial lawsuit against Consumer Protection Group (CPG). CPG brought multiple counterclaims against Westgate.[1] Pursuant to a provision of the Utah Pattern of Unlawful Activity Act (UPUAA) stating that fraud claims brought under the UPUAA are subject to arbitration,[2] Westgate moved to compel arbitration of the UPUAA claims. The district court granted Westgate's motion, ordered the UPUAA claims into arbitration, and left CPG's remaining counterclaims in the district court.

¶ 3 The district court instructed each party to select an arbitrator and then arranged for a third "neutral" arbitrator to be selected by the two party-appointed arbitrators. Westgate selected retired Judge Judith M. Billings, and CPG selected Richard D. Burbidge. The two arbitrators then selected Paul S. Felt as the third arbitrator.

¶ 4 At a pre-arbitration hearing, the arbitration panel asked the parties to sign an "Arbitration Fee Agreement," which included a provision stating that all of the arbitrators considered themselves neutral. Following the arbitration, the panel issued its Findings of Fact, Conclusions of Law, and Award. The panel found that Westgate violated the UPUAA and awarded CPG $65,500.

¶ 5 Following the panel's entry of the award, two things happened. First, CPG submitted a motion in the district court for attorney fees and to confirm the arbitration award. Second, Westgate learned that arbitrator Richard Burbidge is a first cousin of George W. Burbidge II, a shareholder at Christensen & Jensen, P.C., the law firm representing CPG. Neither arbitrator Burbidge nor Christensen & Jensen disclosed this fact. Westgate moved to vacate the award on the ground that by voluntarily declaring himself "neutral," arbitrator Burbidge subjected himself to disclosure requirements applicable to arbitrators designated as neutral by statute. Westgate contended that

2. Utah Code § 76–10–1605(3).

the arbitration award violated the statute and should therefore be vacated.

¶ 6 Uncontested evidence shows that Richard Burbidge and George Burbidge have no significant personal or social relationship, and Westgate does not claim to have any evidence of actual bias by arbitrator Burbidge.

¶ 7 The district court entered an order vacating the arbitration award and denying CPG's motion to confirm the award. The court concluded that arbitrator Burbidge should have disclosed his first-cousin relationship with George Burbidge to Westgate because "a reasonable person would consider this fact likely to affect the impartiality of the arbitrator." The parties agree that the district court's order directs a rehearing by a new arbitration panel, although it does not specifically state this.

¶ 8 CPG petitioned this court for permission to bring an interlocutory appeal from the district court's order under rule 5 of the Utah Rules of Appellate Procedure. We granted the petition, but asked the parties to first address two preliminary jurisdictional issues. We conclude that we have jurisdiction, and, accordingly, address the issues CPG raised in its interlocutory appeal.

## STANDARD OF REVIEW

¶ 9 We asked the parties to address two threshold issues: (1) whether the order from which the petition is brought is subject to direct appeal pursuant to Utah Code section 78B-11-129 or otherwise constitutes a final judgment for purposes of appeal, and (2) whether this court has jurisdiction to review the order pursuant to rule 5 of the Utah Rules of Appellate Procedure. These threshold issues are "a matter of statutory interpretation that we review for correctness, affording no deference to the district court's legal conclusions."[3] "Challenges to subject matter jurisdiction present questions of law, which we [also] review for correctness."[4]

¶ 10 We next consider the issue CPG raised: whether the district court erred when it ruled that an undisclosed first-cousin relationship between Richard Burbidge and George Burbidge required vacatur of the arbitration award under the Utah Uniform Arbitration Act. "The interpretation of a statute is a question of law, which we review for correctness."[5]

## ANALYSIS

I. UNDER SECTION 129 OF THE UTAH UNIFORM ARBITRATION ACT, THERE IS NO APPEAL OF RIGHT FROM A DISTRICT COURT ORDER DENYING CONFIRMATION OF AN ARBITRATION AWARD, VACATING THE AWARD, AND DIRECTING A REHEARING

¶ 11 Rule 3 of the Utah Rules of Appellate Procedure gives a party "an appeal as of right": "An appeal may be taken from a district . . . court to the appellate court with jurisdiction over the appeal from all final orders and judgments . . . ."[6] Failure to timely file a notice of appeal denies this court of jurisdiction over the appeal.[7] Rule 5, on the other hand, governs discretionary appeals from interlocutory orders: "An appeal from an interlocutory order may be sought by any party by filing a petition for permission to appeal from the interlocutory order . . . ."[8]

¶ 12 The jurisdictional question raised in this case emerges from an ambiguity in the Utah Uniform Arbitration Act (UUAA). Section 129 of the UUAA is titled "Appeals" and subsection (1) lists various types of district court decisions from which "[a]n appeal may be taken":

(a) an order denying a motion to compel arbitration;

3. *State v. Jeffries*, 2009 UT 57, ¶ 4, 217 P.3d 265 (internal quotation marks omitted).

4. *Ameritemps, Inc. v. Utah Labor Comm'n*, 2007 UT 8, ¶ 6, 152 P.3d 298.

5. *State v. J.M.S. (State ex rel. J.M.S.)*, 2011 UT 75, ¶ 9, 280 P.3d 410.

6. Utah R.App P. 3(a).

7. *Id.*

8. *Id.* 5(a).

(b) an order granting a motion to stay arbitration;

(c) an order confirming or denying confirmation of an award;

(d) an order modifying or correcting an award;

(e) an order vacating an award *without directing a rehearing*; or

(f) a final judgment entered pursuant to this chapter.[9]

Any ruling listed in subsection 129(1) would give the parties an appeal as of right, which should be pursued under rule 3. Any ruling *not* listed in subsection 129(1), it seems, must reside in the category defined as decisions from which direct appeals may *not* be taken.

 ¶ 13 In this case, the district court simultaneously denied confirmation of the award (as CPG desired) and vacated it (as Westgate desired), but directed a rehearing. The denial of confirmation of the award fits neatly within subsection (c) and therefore appears to give CPG an appeal as of right. On the other hand, the vacatur of the award while directing a rehearing is the opposite of subsection (e), which gives a party an appeal as of right from "an order vacating an award without directing a rehearing." Because a vacatur while directing a rehearing conflicts with subsection (e), it would be reasonable to conclude that there is *no* appeal as of right from an order that vacates an award while directing a rehearing.

¶ 14 The question of whether a party has an appeal of right is directly tied to whether a party seeking to appeal an order vacating an arbitration award should bring a rule 3 direct appeal or a rule 5 interlocutory appeal. Under subsection (c), we would have jurisdiction over a direct appeal because the district court denied confirmation of the arbitration award. Yet under subsection (e), we would not have jurisdiction over a direct appeal because the district court's order contemplated a rehearing. Instead, a party wishing to seek appellate review of this type of order

would be limited to petitioning this court for our permission to bring an interlocutory appeal. We would also have jurisdiction over a direct appeal, under subsection (f), over any "final judgment entered pursuant to" the UUAA.

¶ 15 CPG brought a rule 5 interlocutory appeal. It argues this was proper on the basis that, owing to the directive for a rehearing, it did not have an appeal of right under section 129. CPG contends that it appeals from the order vacating the arbitration award and directing a rehearing, which does not give it an appeal as of right. CPG also asserts that, because the parties are subject to a rehearing, the order was not a final order and CPG therefore did not have an appeal as of right under subsection (f).

¶ 16 Westgate takes the opposite view. It contends that subsection 129(1) allows an appeal of right from an order satisfying *any one* of the enumerated subsections, and subsection (c) expressly provides an appeal of right from orders denying confirmation of an award. Westgate contends that because CPG had an appeal of right but filed an interlocutory appeal, and because CPG's time to file a direct appeal has now passed,[10] this court should dismiss CPG's appeal for lack of jurisdiction.

¶ 17 The UUAA is derived from the Uniform Arbitration Act, a model statute adopted by many states.[11] The Nevada Supreme Court recently interpreted statutory language under similar circumstances in *Karcher Firestopping v. Meadow Valley Contractors, Inc.*[12] and outlined the state of minority and majority judicial views on this jurisdictional issue.[13] According to *Karcher,* "[t]he majority of courts that have considered this jurisdictional issue regarding orders that deny confirmation of an arbitration award and also vacate the award while directing rehearing have determined that such

---

9. Utah Code § 78B–11–129(1) (emphasis added).

10. *See* Utah R.App. P. 3(a).

11. *Compare* Utah Code §§ 78B–11–101 to –131, *with* Unif. Arbitration Act (2000).

12. 125 Nev. 111, 204 P.3d 1262 (2009).

13. *See id.* at 1264–65.

orders are not appealable." [14] The majority view rests on three main rationales: (1) the plain language of the statute allows appeals only from orders vacating arbitration awards without also directing a rehearing; (2) allowing appeals from such orders would "render[ ] the 'without directing a rehearing' language of [subsection (e)] superfluous"; and (3) denying appellate review of these orders ensures that review is limited to "when there is a sufficient degree of finality to the arbitration proceedings." [15]

¶ 18 First, focusing on the plain language of the statute, the majority of courts have found that "these statutes provide for appeals only from orders vacating arbitration awards that do not also direct a rehearing ... conclud[ing] that the plain language of the statutes provide that orders vacating an award and directing a rehearing cannot be appealed." [16] From this conclusion, these courts have held that the addition of an order denying confirmation of the award does not cause the order to become appealable even though an order denying confirmation of an award would be "independently appealable." [17] Second, "in order to give full effect to each of the statutory provisions, ... orders vacating an arbitration award while directing rehearing, and that also deny confirmation of the award, may not be appealed." [18] Otherwise, the language "without directing a rehearing" of subsection (e) would become superfluous.[19] Third, several courts have concluded that the arbitration act "implicitly contains a policy choice of permitting appellate review only when there is a sufficient degree of finality to the arbitration proceedings." [20] The Nebraska Supreme Court, for example, remarked that the purpose of their arbitration act "is to distinguish between orders that conclude the arbitration process,

and are thus suitable for appellate review, and those that do not conclude the arbitration process, rendering appellate review premature." [21]

¶ 19 On the other hand, a minority of courts have permitted an appeal of right from orders denying confirmation of an award and vacating the award while directing a rehearing.[22] The minority approach relies on the following rationale: 1) the statute explicitly provides for appeals from orders denying confirmation of an award; 2) allowing appeals of such orders prevents the arbitration process from continuing indefinitely; and 3) not allowing appeals from such orders would render "half of subsection (c) ... orders denying confirmation, almost meaningless." [23]

¶ 20 First, subsection (c) of the statute provides for appeals from orders "confirming or denying confirmation of an award," expressly allowing a right to appeal an order denying confirmation of an award. "[N]o subsection of the applicable statutes explicitly acts to bar the appealability of an order made appealable under another subsection when that order also contains a ruling that would not otherwise be independently appealable." [24] The minority further notes that if the legislature had intended for orders denying confirmation of an award not to be appealable, it would have added the qualifier "without directing a rehearing," such as it did with subsection (e).[25] Second, "[e]mphasis is also placed on the conclusion that interpreting the language of [section 129] as not allowing appeals from orders that deny confirmation and vacate the award while directing rehearing could allow the arbitration pro-

14. *Id* at 1264.

15. *Id.*

16. *Id.*

17. *Id.*

18. *Id.*

19. *Id.*

20. *Id.*

21. *Id.* at 1265 (citing *Neb. Dep't of Health & Human Servs. v. Struss*, 261 Neb. 435, 623 N.W.2d 308, 314–15 (2001)).

22. *See id.*

23. *Id.*

24. *Id.*

25. *Id.*

cess to continue indefinitely."[26] Third, not allowing an appeal from an order denying confirmation while vacating the award and directing a rehearing makes the second half of subsection (c) almost meaningless, because this would only allow appeals "in the rare situation" of an order that denies a motion to confirm but fails to vacate the award.[27]

¶ 21 Our court of appeals recently considered the identical issue in *Hicks v. UBS Financial Services, Inc.*[28] But the court of appeals in *Hicks* did not expressly follow the minority or majority view. Instead, it determined that "[t]he order appealed from [denying confirmation while vacating the award and directing a rehearing] is ... final.... By granting Hicks's motion to vacate and denying UBS's motion to confirm, the district court resolved all claims before it and was left with nothing further to rule upon."[29] Because subsection (f) allows appeals from a final judgment, the court of appeals concluded that it had jurisdiction over the appeal.

■ ¶ 22 We disagree with the court of appeals' assessment that the order from which the appeal was taken was final. In *Powell v. Cannon,* we determined that for an order to be final, "it must dispose of the case as to all the parties, and finally dispose of the subject-matter of the litigation on the merits of the case. In other words, it must end the controversy between the litigants, leaving nothing for the court to do but execute the judgment."[30] In both *Hicks* and this case, the order appealed from required a rehearing of the matter arbitrated. Thus, it did not end the controversy between the parties and it was therefore not final. We overrule *Hicks* on this issue and determine that combined orders denying confirmation of an arbitration award and vacating an award while directing a rehearing are not final orders subject to appeal under section 129.

■ ¶ 23 Having concluded that the order is not a final, appealable order, we must next consider whether the order gives CPG an appeal of right under rule 3. Our analysis is aided by a close examination of CPG's petition for interlocutory appeal. CPG petitioned specifically for appellate review of the district court's order "vacating an arbitration award." And, of course, this is the motion that truly troubled CPG. The order denying the motion to confirm was a superfluity given the vacatur and was therefore not the subject of the interlocutory appeal. Orders to vacate arbitration awards while directing a rehearing are not included among section 129's list of orders that give a party a right to direct appeal. We thus conclude that CPG's interlocutory appeal was proper.

## II. THE UUAA DOES NOT SUPPORT VACATUR IN THIS CASE

¶ 24 We next consider whether it was proper for the district court to vacate the arbitration award based on the fact that arbitrator Burbidge did not disclose his first-cousin relationship with attorney George Burbidge.

■ ¶ 25 Westgate argues that arbitrator Richard Burbidge, as a neutral arbitrator, had an obligation to disclose his first-cousin relationship with attorney George Burbidge, a shareholder in the firm representing CPG, and his failure to do so requires vacatur of the arbitration award. "A [district] court faced with a motion to vacate or modify an arbitration award is limited to determining whether any of the very limited grounds for modification or vacatur exist."[31]

### A. Subsection 124(1)(b) Does Not Support Vacatur in This Case

¶ 26 Westgate relies on subsection 124(1)(b) of the UUAA, which reads in relevant part:

Upon motion to the court by a party to an arbitration proceeding, the court shall va-

**26.** *Id.*

**27.** *Id.* (internal quotation marks omitted).

**28.** 2010 UT App 26, 226 P.3d 762.

**29.** *Id.* ¶ 17.

**30.** 2008 UT 19, ¶ 11, 179 P.3d 799 (alterations omitted) (footnotes omitted) (internal quotation marks omitted).

**31.** *Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.,* 925 P.2d 941, 947 (Utah 1996).

cate an award made in the arbitration proceeding if:

. . . .

 (b) there was:

 (i) evident partiality by an arbitrator appointed as a neutral arbitrator;

 (ii) corruption by an arbitrator; or

 (iii) misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding[.] [32]

We consider and reject each of these three grounds.

**1. Subsection (1)(b)(i) Does Not Apply Because Arbitrator Burbidge Was Not Appointed as a Neutral Arbitrator**

■■■ ¶ 27 Westgate's analysis begins with the presumption that arbitrator Burbidge was "appointed as a neutral arbitrator." We disagree. Although the two party-appointed arbitrators, including arbitrator Burbidge, designated themselves as neutral before the arbitration began, they were not *appointed* as neutral arbitrators. Arbitrator Burbidge was appointed by CPG and was not selected jointly by the parties as a neutral arbitrator. The determination of neutrality occurs at the time of appointment.[33] Therefore, arbitrator Burbidge is not subject to the rule governing neutral arbitrators found in section 124(1)(b)(i).[34]

**2. Subsections (1)(b)(ii) and (iii) Do Not Apply Because There Have Been No Allegations of Corruption or Misconduct That Prejudiced the Rights of a Party**

■■ ¶ 28 Westgate has never alleged that arbitrator Burbidge's failure to disclose his

first-cousin relationship with attorney Burbidge resulted in corruption or misconduct that prejudiced its rights. Even if Westgate contended that the mere failure to disclose equated to misconduct, which it has not, the statute requires that the misconduct be of the type that prejudiced its rights.[35] In other words, nonprejudicial misconduct does not justify vacatur under subsection 124(1)(b).

*B. Section 113 Does Not Support Vacatur in This Case*

■■ ¶ 29 As a party-appointed arbitrator, arbitrator Burbidge *is* subject to the disclosure requirements of section 113:

(1) Before accepting appointment, an individual who is requested to serve as an arbitrator, after making a reasonable inquiry, shall disclose to all parties to the agreement to arbitrate and arbitration proceeding and to any other arbitrators any known facts that a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding, including:

 . . . .

 (b) an existing or past relationship with any of the parties to the agreement to arbitrate or the arbitration proceeding, their counsel or representatives, a witness, or another arbitrator.

. . . .

(4) If the arbitrator did not disclose a fact as required by Subsection 78B–11–

---

**32.** UTAH CODE § 78B–11–124(1)(b).

**33.** *See Mahnke v. Superior Court*, 180 Cal.App.4th 565, 103 Cal.Rptr.3d 197, 205 (Ct.App.2009) (explaining that neutral arbitrators are those jointly selected or appointed by a court).

**34.** This conclusion also forecloses any reliance on Utah Code section 78B–11–113(5), which states that "[a]n arbitrator appointed as a neutral arbitrator who does not disclose ... a known, existing, and substantial relationship with a party is presumed to act with evident partiality under Subsection 78B–11–124(1)(b)."

**35.** In *DeVore v. IHC Hosps., Inc.*, 884 P.2d 1246 (Utah 1994), a case reviewing an arbitration award under a similar statutory scheme, this court noted that requiring an *actual* showing of

prejudice would be frequently "insurmountable." *Id.* at 1256 (internal quotation marks omitted). We therefore determined the movant must not provide proof of "actual" prejudice, but only "evidence of partiality [that is] certain and direct, not remote, uncertain, or speculative." *Id.* Upon such a showing, the court would vacate the arbitration award "if a reasonable person would conclude that an arbitrator, appointed as neutral, showed partiality or was guilty of misconduct that prejudiced the rights of any party." *Id.* In this case, we need not consider whether a reasonable person would conclude that arbitrator Burbidge was guilty of misconduct that prejudiced the rights of any party because Westgate provided no evidence, nor even asserted, that its rights were prejudiced.

124(1)(b) may vacate an award.[36]

¶ 30 Westgate would have us determine that a first-cousin relationship, with nothing more, qualifies as "an existing or past relationship" that "a reasonable person would consider likely to affect the impartiality of the arbitrator in the arbitration proceeding." But we need not define the contours of relationships to determine the outcome in this case. Even if a first-cousin relationship were such a relationship,[37] a point on which we express no opinion at this time, the remedy for such failure to disclose is provided by subsection 113(4). That provision grants discretion to the district court, but only within the limits set by subsection 124(1)(b), including evident partiality by a neutral arbitrator, corruption, or misconduct that prejudiced the rights of a party. And as stated above, none of the provisions of subsection 124(1)(b) apply. Vacatur was thus inappropriate.

¶ 31 This result does not render subsection 113(4) obsolete. Instead, it emphasizes our desire to encourage arbitration and vacate an award only when there is evidence of evident partiality by a neutral arbitrator, corruption, or misconduct resulting in prejudice. This approach parallels our own harmless error doctrine. It is certainly possible that the failure to disclose facts likely to affect impartiality could amount to corruption or prejudicial misconduct, but that is not the case here. If we were to vacate the arbitration award here, owing to a failure to disclose a relationship that resulted in absolutely no prejudice or harm, we would waste the very resources that arbitration hopes to preserve and penalize the parties by forcing them to rearbitrate. But there is no allegation of corruption or misconduct, and the arbitration in all respects appears to be fair. Justice is not served by vacating an award simply because an arbitrator did not disclose a nonprejudicial relationship. For this reason, subsection 113(4) specifically directs that vacatur is only appropriate if one of the three provisions of subsection 124(1)(b) can be shown.

¶ 32 Westgate has failed to prove any of the three circumstances enumerated in subsection 124(1)(b), and thus we conclude there were no grounds for vacating the award. We reverse the district court's order vacating the arbitration award.

## CONCLUSION

¶ 33 We hold that combined orders denying confirmation of an arbitration award and vacating an award while directing a rehearing do not create an appeal of right under section 129 of the UUAA, and thus it was proper for CPG to bring an interlocutory appeal under rule 5.

¶ 34 We also conclude that party-appointed arbitrators are held to the disclosure standards of section 113 of the UUAA and not the standards that apply to neutral arbitrators. Under subsection 113(4), the failure to disclose a relationship can support vacatur only if it also meets one of the provisions outlined in subsection 124(1)(b). None of those have been shown here. We therefore reverse the decision of the district court to vacate the arbitration award and remand for actions consistent with this opinion.

Associate Chief Justice NEHRING authored the opinion of the Court, in which Chief Justice DURRANT, Justice DURHAM, Justice PARRISH, and Justice LEE joined.

---

**36.** Utah Code § 78B–11–113.

**37.** The parties attempt to define which relationships must be disclosed. They turn, for example, to rule 2.11(A)(2) of the Code of Judicial Conduct, which requires a judge to disqualify himself or herself if he or she has a third-degree relationship with a party, lawyer, or other interested person. A first-cousin is a fourth-degree relationship, and would therefore not fall within these parameters. The Code of Judicial Conduct does not explicitly apply to arbitrators. CPG contends that it *should* apply and, assuming that it does, arbitrator Burbidge was not required to disclose the relationship. Westgate, however, contends that the disclosure requirements for arbitrators should be broader than for judges because arbitrators have a personal financial interest in being hired for a given case, whereas judges do not. Because we conclude that subsection 124(1)(b) does not authorize vacatur in this case, we decline this opportunity to define which relationships arbitrators must disclose.