ANCHORAGE MEDICAL AND SURGICAL
CLINIC, a partnership, Appellant,

v.

Herbert H. JAMES, M. D., Appellee.

No. 2780.

Supreme Court of Alaska.

Nov. 15, 1976.

Michelle V. Minor and John M. Stern, Jr., Anchorage, for appellant.

Milton M. Souter, Kodiak, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ.

RABINOWITZ, Justice.

Anchorage Medical and Surgical Clinic seeks a reversal of the superior court's confirmation of the arbitrators' award which was made to Dr. James. We affirm the superior court's judgment.

Upon Dr. James' withdrawal from the clinic a dispute arose as to the sum of money Dr. James was entitled to receive. The parties then agreed to submit a bind-

ing arbitration to settle the dispute ". . . regarding the sum of money which Dr. James is entitled to be paid by the Clinic as a result of Dr. James' voluntary withdrawal from partnership in the clinic. . . ." This arbitration agreement further provided that the arbitrators were to have ". . . all powers and duties specified in the Uniform Arbitration Act of Alaska,[1] and their decision shall be final and binding in all respects on Dr. James and the Clinic."[2]

The Clinic's sole objection to the arbitrators' decision is that, of the $85,054.00 awarded to Dr. James, some $15,000 was improper. The basis for the award of this disputed $15,000 item rests on the arbitrators' recognition that:

. . . despite depreciation, the furniture, equipment and supplies of the Anchorage Clinic have a definite minimum replacement value. This was not recognized or reflected in any of the accounting documents submitted.

In this appeal the Clinic also challenges the superior court's award of $1,000 as attorney's fees to Dr. James.

Clinic advances several arguments in support of its contention that the $15,000 component of the award was error. To summarize, the Clinic contends that the increment was improper because the arbitrators: exceeded the powers granted to them; engaged in evident miscalculation of figures; and made an award based on a matter not submitted to them.[3] In light of these asserted errors the Clinic further contends that the superior court should have modified or vacated the arbitration award.

The legal framework for our conclusion that the superior court did not err in denying Clinic's application to modify or vacate the arbitration award in the case at bar derives from two previous opinions of this court. In *Nizinski v. Golden Valley Electric Association, Inc.,* 509 P.2d 280 (Alaska 1973), we quoted with approval the assertion that arbitration is "essentially a creature of contract, a contract in which the parties themselves charter a private tribunal for resolution of their disputes," and made the further statement that "[t]he law now favors arbitration with a minimum of court interference."[4] *Nizinski* was fol-

1. AS 09.43.010 *et seq.*

2. The partnership agreement itself provided for arbitration in the following language:

    If at any time during the existence of this partnership or after the dissolution or termination thereof, any question, disagreement or difference shall arise among the partners or any of them or the estate of a deceased partner concerning the partnership, its affairs, transactions, business or accounts, or the meaning or interpretation of this Agreement, or the rights, duties or obligations of the partners or the estate of a deceased partner, such question, disagreement or difference shall be submitted to and determined by arbitration in accordance with the Uniform Arbitration Law of Alaska.

3. The Clinic's legal arguments are geared to AS 09.43.120 and AS 09.43.130 of Alaska's version of the Uniform Arbitration Act. These sections of Alaska's Uniform Arbitration Act define the superior court's power to review and either vacate or modify an arbitration award.

    AS 09.43.120(a) provides in part: "On application of a party, the court shall vacate

an award if . . . (3) the arbitrators exceeded their powers." AS 09.43.130 provides that when an application is made within 90 days after delivery of a copy of the award to the applicant, the superior court shall modify or correct the award if

(1) there was an evident miscalculation of figures or an evident mistake in the description of a person, thing or property referred to in the award;

(2) the arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) the award is imperfect in a matter of form not affecting the merits of the controversy.

. . . (c) An application to modify or correct an award may be joined in the alternative with an application to vacate the award.

4. *Nizinski v. Golden Valley Elec. Ass'n, Inc.,* 509 P.2d 280, 283 (Alaska 1973). In *Nizinski* we found the crucial issue to be whether the employee was discharged for good cause. Since

lowed by *University of Alaska v. Modern Construction, Inc.,* 522 P.2d 1132 (Alaska 1974).[5] Responding to the University's argument that the arbitrators exceeded their powers by awarding "impact" damages not covered by the contract, we stated:

> The powers of arbitrators are confined to those conferred upon them by the arbitration agreement, subject, of course, to further limitations imposed by the law of the jurisdiction. Here, the contractual arbitration clause empowered the arbitrators to decide '[a]ll claims, disputes and other matters in question arising out of, or relating to this Contract or the breach thereof . . . .' This agreement necessarily gave the arbitrators power to interpret the contract; otherwise it would have been impossible for them to determine which claims or disputes they could properly arbitrate.[6] (footnotes omitted)

In *Modern* we approved of the following standard of review when an arbitration award is attacked on the grounds that the arbitrators exceeded their powers through erroneous interpretation of the contract. In such circumstances we said that the reviewing court should determine

> . . . whether the construction of the contract made by the arbitrator[s] is a

reasonably possible one that can seriously be made in the context in which the contract was made. Stated affirmatively, if all fair and reasonable minds would agree that the construction of the contract made by the arbitrator[s] was not possible under a fair interpretation of the contract, then the court would be bound to vacate or refuse to confirm the award.[7]

The University of Alaska in *Modern* made the further contention that since the record is silent regarding how the arbitration panel arrived at the lump sum awarded to Modern, it was possible that the award was based on unverified subcontractor claims (claimed by Modern on the basis that Modern itself would ultimately be liable). In affirming the award we disposed of this argument and the University's remaining contentions stating:

> [W]e conclude that whenever possible an arbitration award rendered in the *form required by our statute is presumptively valid and shall be upheld without inquiry into the merits of the dispute.* It is our belief that '[t]he law now favors arbitration with a minimum of court interference.' We find nothing in the record to rebut the presumption of validity due the award.
>
> The decision of the superior court is affirmed.

*Id.* at 284–85.

"good cause" was the local issue for arbitration purposes it would not be a finding subject to review except in certain rare instances. We then commented on the instances raised by the employee which could be reviewed and concluded:

> In fact a review of the record in this instance indicates there was no fraud or gross error. The arbitrator was selected in an impartial manner, appellant was given notice of the arbitration proceedings and an opportunity to be heard. The record of the arbitration proceeding indicated that it was conducted in a fair and reasonable manner with each side given ample opportunity to present their position. While we might not necessarily agree with the decision of the arbitrator, it does not appear to be a product of fraud, gross negligence, corruption, gross error or misbehavior on the part of the arbitrator.

5. There the contractor (Modern) in a construction contract had sought arbitration involving several claims against the University for delay in a construction project. The claims included what appeared to be incidental damages. Of some $900,000 sought, the arbitrators awarded a lump sum of nearly $400,-000 "in full settlement of all claims submitted." No allocation of the award among the various claims was made.

6. 522 P.2d at 1137.

7. *University of Alaska v. Modern Constr., Inc.,* 522 P.2d 1132, 1137 (Alaska 1974). Stating that ambiguous contract clauses should be construed in favor of arbitrability, we held that "impact" damages, which were not explicitly mentioned in the contract, were arbitrable.

Finally, the University claims that the arbitrators exceeded their powers by ignoring legal precedent on the issues of (1) recoverability of 'consequential' damages; (2) accord and satisfaction; (3) proof of liability for delays; and (4) propriety of the 'total cost–total time' method for computing the amount of Modern's damages. The general rule in both statutory and common law arbitration is that arbitrators need not follow otherwise applicable law when deciding issues properly before them, unless they are commanded to do so by the terms of the arbitration agreement. Since the relevant clause here contains no such command, the arbitrators were free to determine the merits of Modern's claims under their own notions of fairness.[8] [emphasis added]

█ *Nizinski* and *Modern* are of controlling significance in our rejection of Clinic's assertions of error in this appeal. These cases stand for the proposition that it is the policy of Alaska's courts to affirm arbitration awards except in the most egregious instances. Unless it is not reasonably possible to maintain that a particular clause may bear an interpretation given to it by the arbitrators, the courts will not meddle in the arbitrators' interpretation.

█ It is essentially against this legal backdrop that we concluded that Clinic's various attacks on the arbitration award should be rejected. We shall briefly discuss the more significant of Clinic's assertions: Clinic's first argument is that the disputed item awarded by the arbitrators was in excess of the powers granted the arbitrators by § 21 of the partnership agreement and the arbitration agreement. Clinic reasons that § 21 defines the value of a partner's interest unambiguously as " . . . the sum of his capital account. . . ." Section 4(a) of the Partnership Agreement defines the capital of the partnership as ". . . such sums of money

and property, as . . . may be contributed by the partners . . . plus earnings retained by the partnership. . . ." Clinic then takes a logically inexplicable leap in its argument and asserts that "[t]o include 'furniture, equipment and supplies' in a partner's capital account is entirely inconsistent with accounting theory." Clinic suggests that to do so constitutes "double counting".

Thus, the issue under our *Modern* test is whether reasonable minds could agree that the constructions placed upon the parties' arbitration agreements in the case at bar was not possible under a fair interpretation of the agreements. We conclude that a reasonable mind could conclude that the arbitrators' interpretation was possible under the terms of the arbitration agreements. The reference to "property" in § 4(a) of the partnership agreement comprehends the physical plant of the clinic. Thus, considerations of the value of this plant could be part of a capital account. In addition, the words "capital account" as defined in the partnership agreement are nonetheless ambiguous to the degree that the relevant section of the partnership agreement does not spell out with particularity how "property" is to be valued; *i.e.*, whether actual value, book value, etc. The arbitrators specifically stated the increment was awarded because the replacement value of the plant was not recognized in the accounting documents submitted and it was this different value that caused an increase in the award. To the degree "capital" remained an ambiguous term after a reading of § 4(a), the interpretation placed on it by the arbitrators could not be said to be unreasonable.

█ Clinic's second argument is that the increment in award made by the arbitrators constituted an evident mistake in the description of a thing or property.[9] In *Modern* we stated that arbitration awards rendered in proper form are "presumptive-

---

8. *Id.* at 1139–40.

9. *See* AS 09.43.130(a)(1), *supra* note 3.

ly valid."[10] Given this presumption and the "evident mistake" prerequisite language of AS 09.43.130(a) it follows that the error which calls for modification or correction of an arbitration award must be manifestly clear.[11] Here we believe it apparent from the terms of the arbitration agreement, providing for arbitration "regarding the sum of money which Dr. James is entitled to be paid by the Clinic as a result of Dr. James' voluntary withdrawal from partnership in the Clinic . . .", replacement value of the plant in addition to its book value could be included in determining Dr. James' share of the partnership capital account.

■■■ Clinic's third argument is that the arbitrators' award comprehended matters not submitted to the arbitrators.[12] Under the broad mandate given the arbitrators pursuant to the parties' arbitration agreement we cannot say that the matter in dispute was not submitted to them. The task of the arbitrators in the instant case included consideration of factors necessary to determine the sum of money which Dr. James was entitled to receive. As we have indicated previously, the arbitrators' interpretation of what is submitted to them is entitled to significant weight.[13]

■■■ Clinic's final point in this appeal is that the superior court erred in awarding $1,000 in attorney's fees to Dr. James. AS 09.43.140 of our Uniform Arbitration Act authorizes the superior court to award "costs and disbursements" to the prevailing party in an action to affirm or modify an arbitration award. Our review of the record has convinced us that the award of attorney's fees should not be disturbed.[14]

We thus conclude that the superior court's confirmation of the arbitration award as well as the award of attorney's fees to Dr. James, should be affirmed.

10. *University of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132 (Alaska 1974).

11. *Compare Nizinski v. Golden Valley Elec. Ass'n, Inc.*, 509 P.2d 280, 283 (Alaska 1973).

12. *See* AS 09.43.120(a)(3) and AS 09.43.130 (a)(1), *supra* note 6.

13. *University of Alaska v. Modern Constr., Inc.*, 522 P.2d 1132 (Alaska 1974).

14. We deem it unnecessary to discuss any of the other arguments submitted by the Clinic in this appeal.