**BUZAS BASEBALL, INC., a Utah corporation; Buzas Baseball, Inc., an Oregon corporation; Joseph J. Buzas, an individual and stockholder; and Pacific Coast League of Professional Baseball Clubs, Inc., a Florida corporation not for profit, Plaintiffs and Appellees,**

v.

**SALT LAKE TRAPPERS, INC., a Utah corporation; Jack Donovan, an individual and stockholder; and Pioneer Baseball League, a Montana corporation, Defendants and Appellants.**

No. 950351.

Supreme Court of Utah.

Oct. 4, 1996.

Kevin Egan Anderson, Robert S. Campbell, and Tracy H. Fowler, Salt Lake City, for plaintiffs.

Dale A. Kimball, Gregory D. Phillips, and Scott R. Ryther, Salt Lake City, for Salt Lake Trappers and Donovan.

John R. Faust and Mitchell E. Hornecker, Portland, Ore., for Pioneer Baseball League.

ZIMMERMAN, Chief Justice:

After the trial court's grant of summary judgment in favor of plaintiffs Buzas Baseball, Inc., Joseph J. Buzas, and the Pacific Coast League of Professional Baseball Clubs, Inc. (collectively, "Buzas Baseball"), defendants Salt Lake Trappers, Inc. ("Trappers"), and Pioneer Baseball League, Inc. ("Pioneer"), appealed to this court.[1] Pursuant to section 78–2–2(3)(j) of the Utah Code, we have appellate jurisdiction to review the trial court's order vacating and modifying an arbitration award. We reverse the trial court's decision, confirm the arbitration award, and remand the case to the trial court for reconsideration of the issue of attorney fees in light of this opinion. We further award a

---

1. Prior to oral argument, Pioneer and Buzas Baseball filed a stipulation and joint motion for partial dismissal of appeal which withdrew Pioneer's appeal to this court. Thus, we will not address the issues pertaining to compensation for Pioneer.

reasonable attorney fee to the Trappers on this appeal and remand to the trial court to determine the amount of such fees.

The relevant facts are drawn from the formal opinion issued by George Nicolau, the chairman of the panel that arbitrated the dispute between Buzas Baseball and the Trappers. On August 31, 1993, Buzas Baseball and the Trappers signed a memorandum of agreement in which the parties agreed to arbitrate two issues which had arisen as the result of Buzas Baseball's drafting of the Trappers' Salt Lake City territory: (i) the amount of just and reasonable compensation owed by Buzas Baseball to the Trappers for the drafting of the Salt Lake territory, and (ii) the amount of predraft damages, if any, arising from Buzas Baseball's failure to seek and obtain the Trappers' approval for talks with Salt Lake City exploring the possibility of acquiring the Salt Lake territory.

At the time the dispute arose, the Trappers were a member club of the Pioneer League, a short-season, eight-team rookie classification league (the lowest level of professional baseball). Buzas Baseball, then operating as the Portland Beavers (now the Salt Lake Buzz), was a member club of the Triple A Pacific Coast League (the highest level of professional baseball below the major leagues). Under various agreements by which the parties were bound at the time the dispute arose, a higher classification team such as Buzas Baseball could "draft" the territory of a lower classification team such as the Trappers, provided it paid "just and reasonable compensation" to the lower classification team.

In the arbitration, the Trappers claimed that Buzas Baseball failed to follow the applicable procedures for drafting the Salt Lake territory in late 1992 and thus damaged the Trappers. Specifically, the Trappers claimed that Buzas Baseball failed to obtain the Trappers' permission to explore the possibility of acquiring the Salt Lake territory. Under section 10.08(e) of the National Association Agreement ("NAA"), by which the parties were bound, a higher classification team wishing to explore the possibility of acquiring a lower classification team's territory at some point in the future must seek and obtain permission for such exploratory talks from the lower classification team. This rule allows the lower classification team to mitigate the damage that might occur, such as reduced attendance, when the public learns of such exploratory talks.

A series of events during late 1992 led to an October 14th agreement between Buzas Baseball and Salt Lake City whereby Buzas Baseball would move the team then known as the Portland Beavers to Salt Lake City for the 1994 baseball season. Buzas Baseball neither sought nor obtained the Trappers' consent before engaging in the negotiations which led to the October 14th agreement.

After eleven days of hearings before a panel of five arbitrators in February and April of 1994, the chairman, George Nicolau, issued a 54–page opinion and award in October of 1994. Of the panel of five arbitrators, two concurred in Chairman Nicolau's award and two dissented from it. Chairman Nicolau's opinion specifically found that Buzas Baseball had violated the terms of the NAA in failing to seek and obtain the Trappers' consent for the exploratory talks in 1992. The arbitration panel awarded the Trappers $552,152 on their claim for predraft damages arising from Buzas Baseball's violation of the NAA. Of this amount, $400,000 represented the value of the Trappers' lost franchise and $152,152 represented the lost net profits for the 1993 season, which the Trappers were unable to play because the agreement between Buzas Baseball and Salt Lake City led to the razing of Derk's Field to make room for a new stadium for the start of the 1994 season. The panel also awarded the Trappers $1.2 million as the amount of just and reasonable compensation due them as a result of the drafting of their territory. Chairman Nicolau's opinion based this valuation of the Salt Lake territory on evidence from a number of experts on both sides. The panel awarded $1.2 million after duly considering the expert evidence, noting that the disagreement between the experts was "of major proportions."

The panel relied in part upon the comparable sales testimony of the Trappers' expert,

Dr. Cone.[2] Dr. Cone put the value of the Salt Lake territory at somewhere between $2.6 and $3.1 million. He arrived at that value by looking at the sale price of other baseball teams, but the comparison was not perfect, as noted in Chairman Nicolau's opinion. Specifically, the "comparable" sales Dr. Cone used were not of other Pioneer League teams, but rather were of teams in higher classification leagues. Dr. Cone reasoned, and the arbitration panel agreed, that the Salt Lake territory was not comparable to any other Pioneer League territory, being far superior to the other territories in the league. As recounted in Chairman Nicolau's opinion, Dr. Cone testified that "by the measurements of attendance, population and revenue, the Salt Lake territory was at least comparable in value to the median of Class AA clubs." The arbitration panel rejected the direct comparability of Salt Lake City with Class AA territories and, after considering Dr. Cone's testimony and that of other experts for both sides, determined that the value of the Salt Lake territory to the Trappers was $1.2 million.

After receiving a copy of the award, Buzas Baseball filed a verified complaint against the Trappers in state district court on November 29, 1994. Buzas Baseball sought an order vacating or, in the alternative, modifying the arbitration award. It claimed that because the arbitration panel had based the $1.2 million territory award on evidence of comparable sales all of which included the territory

*and* the franchise, having already awarded $400,000 for the value of the franchise, the arbitration panel had given the Trappers an unwarranted "double recovery." After protracted litigation, the trial court entered a judgment and order vacating and modifying the arbitration awards on August 8, 1995. The order, which included findings of fact and conclusions of law, was entered after a July 12, 1995, hearing on Buzas Baseball's motion to vacate or amend and for summary judgment as to the arbitration awards. Despite finding it necessary to enter findings of fact, the trial court granted summary judgment to Buzas Baseball. The order modified the panel's territory award to the Trappers, reducing the award by $400,000. The modification was made on the stated grounds of manifest disregard of the law, exceeding authority, evident material miscalculation, and violation of public policy.

On appeal, the Trappers argue that the trial court erred in reconsidering the merits of the arbitration award and in subsequently modifying that award.[3] We begin by noting that the Utah Arbitration Act "reflects long-standing public policy favoring speedy and inexpensive methods of adjudicating disputes." *Allred v. Educators Mut. Ins. Ass'n,* 909 P.2d 1263, 1265 (Utah 1996). Accordingly, the standard for reviewing an arbitration award is highly deferential to the arbitrator.

**2.** On appeal, the Trappers point out that abundant evidence was presented at the arbitration, from experts and nonexperts alike, as to the value of the Salt Lake territory. While we note that the portions of the transcript of the arbitration provided by the Trappers do indicate that multiple experts and nonexperts testified to the value of the Salt Lake territory and that such testimony provides more than ample support for the panel's award, we do not rely on the transcript of the arbitration in this opinion. In reviewing an arbitration award, the trial court, and we, must rely solely upon the arbitration award itself and the memorandum of agreement which binds the parties and limits the scope of issues to be determined by the arbitration. 4 Am.Jur.2d *Alternative Dispute Resolution* § 225 (1995) ("[T]he award itself is conclusive evidence of all matters contained in it. . . .").

**3.** The procedural posture of this case in the trial court was somewhat confused. After determin-

ing that application to the court to modify or vacate an arbitration award should be by motion and allowing Buzas Baseball to restyle its verified complaint as a "Motion and Complaint to Vacate or Modify Arbitrator's Award," the trial court further allowed Buzas Baseball to file a motion for summary judgment in support of plaintiff's motion to vacate or amend the arbitration award. Buzas Baseball ultimately filed a memorandum in support of the motion to vacate or amend and for summary judgment. Hearing was had on these pleadings, and the trial court granted summary judgment in favor of Buzas Baseball but also entered findings of fact, which are clearly inappropriate in any grant of summary judgment. By definition, summary judgment cannot be granted where there are disputed facts. *Ron Shepherd Ins., Inc. v. Shields,* 882 P.2d 650, 654 (Utah 1994) ("Summary judgment is proper only when no genuine issues of material fact remain. . . .").

[J]udicial review of arbitration awards should not be pervasive in scope or encourage repetitive adjudications but should be limited to the statutory grounds and procedures for review. As a general rule, an arbitration award will not be disturbed ... because the court does not agree with the award as long as the proceeding was fair and honest and the substantial rights of the parties were respected.

*DeVore v. IHC Hosps., Inc.*, 884 P.2d 1246, 1251 (Utah 1994) (citing *Utility Trailer Sales of Salt Lake, Inc. v. Fake*, 740 P.2d 1327, 1329 (Utah 1987); *Bivans v. Utah Lake Land, Water & Power Co.*, 53 Utah 601, 174 P. 1126, 1130 (1918)).

 The Trappers first argue that the trial court erred in granting summary judgment to Buzas Baseball because the trial court simply substituted its judgment for that of the arbitrator.[4] We agree. We consider first the applicable standards of review before considering the statutory grounds for modification or vacatur of an arbitration award.

 There are two standards of review at issue here: (i) the appropriate standard of review for a trial court to use in reviewing an arbitration award under the statutes, and (ii) the appropriate standard of review for this court to use in reviewing the trial court's proceedings.[5] As to the first, the standard of review for a trial court reviewing an arbitration award is an extremely narrow one: "[T]he court should give considerable leeway to the arbitrator, setting aside his or her decision only in certain narrow circumstances." *First Options of Chicago v. Kaplan*, —— U.S. ——, ——, 115 S.Ct. 1920, 1923, 131 L.Ed.2d 985 (1995). A trial court faced with a motion to vacate or modify an arbitration award is limited to determining whether any of the very limited grounds for modification or vacatur exist. It is well settled, both in Utah and in the federal courts, that the trial court may not substitute its judgment for that of the arbitrator, nor may it modify or vacate an award because it disagrees with the arbitrator's assessment. *United Paperworkers Int'l Union v. Misco,*

4. The Trappers also argue that the trial court erred in its denial of their motion to dismiss because both the Utah Arbitration Act and the Federal Arbitration Act require a party wishing to have the court vacate or modify an arbitration award to apply to the court by motion. *See* 9 U.S.C. § 6; Utah Code Ann. §§ 78–31a–14, –15. The statutes provide for this summary procedure "to expedite judicial treatment of matters pertaining to arbitration." *World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 365–66 (2d Cir.1965). While Buzas Baseball brought this action by filing a verified complaint rather than a motion, as contemplated by the statutes, requiring the trial court to grant a motion to dismiss on that basis would elevate form over substance. Further, the trial court addressed this issue and allowed Buzas Baseball to amend its pleading, which it subsequently did. We note that several federal cases have addressed this issue and determined that an application under the federal statute made to the court in the improper form of a complaint should be treated as a motion. *See, e.g., In re Worcester Silk Mills Corp.*, 50 F.2d 966, 967 (S.D.N.Y.1927) ("The petition and answer must therefore be regarded as affidavits submitted in support of a motion...."). However, for guidance in future cases, we note that application to the court to modify or vacate an arbitration award under the Utah Arbitration Act should be by motion. Utah Code Ann. §§ 78–31a–14, –15.

We also note that the successive pleadings filed in this case by Buzas Baseball were antithetical to the policy of expediting judicial treatment of arbitration matters. Those successive pleadings required the Trappers to respond repeatedly, thus generating over 2,000 pages of record in this case. We reiterate that the proper procedure would have been for Buzas Baseball to file a single motion to vacate or amend, requiring a single response: the expedited procedure contemplated by the statutes and required by the policies underlying arbitration. *See* Utah Code Ann. §§ 78–31a–14, –15; *World Brilliance Corp.*, 342 F.2d at 365–66.

5. Because Utah law on this issue is sparse, and because the provisions of the Utah Arbitration Act are nearly identical to those contained in the Federal Arbitration Act (both were based on the Uniform Arbitration Act), we look to the law of other states and to federal case law for guidance on these issues. *Brickyard Homeowners' Ass'n Management Comm. v. Gibbons Realty*, 668 P.2d 535, 540 (Utah 1983) ("Identity in language [in Utah and federal statutes] presumes identity of construction, so that we look to federal ... law for guidance."). The provisions of the Utah Arbitration Act at issue in this case are virtually identical to those in the Federal Arbitration Act, and under the facts in this case, we adopt the federal courts' interpretations as Utah law. We reserve the right to adopt a different construction for the Utah Arbitration Act than that given to the Federal Arbitration Act should our statute or the facts warrant.

*Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987); *see also Robinson & Wells, P.C. v. Warren,* 669 P.2d 844, 847 (Utah 1983); *Giannopulos v. Pappas,* 80 Utah 442, 15 P.2d 353, 356 (1932) ("Ordinarily a court has no authority to review the action of arbitrators to correct errors or to substitute its conclusion for that of the arbitrators...."); *Bivans,* 174 P. at 1130 ("[A]wards will not be disturbed on account of irregularities or informalities, or because the court does not agree with the award...."). Further, "[c]ourts ... do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.... If the courts were free to intervene on these grounds, the speedy resolution of grievances by private mechanisms would be greatly undermined." *Misco,* 484 U.S. at 38, 108 S.Ct. at 370–71. Thus, the trial court in this case properly limited itself, at least in form, to considering the grounds urged upon it by Buzas Baseball.[6]

■ The second standard of review at issue here is that to be used by this court in reviewing a trial court's ruling confirming, vacating, or modifying an arbitration award. "[T]here is no *special* standard governing [an appellate court's] review of a district court's decision" to confirm, vacate, or modify an arbitration award. *First Options,* —— U.S. at ——, 115 S.Ct. at 1926. Thus, in reviewing the order of a trial court confirming, vacating, or modifying an arbitration award, "we grant no deference to the district court's conclusions [of law] but review them for correctness," *DeVore,* 884 P.2d at 1251, and "we review the district court's factual findings under a clearly erroneous standard," *id.* at 1256.

■ The Trappers argue that the findings of fact made by the trial court were an inappropriate substitution of the trial court's judgment for that of the arbitrator. We agree. In considering the statutory grounds urged upon it by Buzas Baseball, the trial court inappropriately entered findings of fact in its order granting summary judgment. In some instances, it is appropriate for a trial court to make findings of fact in determining whether grounds for vacating or modifying an arbitration award exist, such as when the claim is one of partiality on the part of the

---

**6.** Under the Utah Arbitration Act, the court may modify an arbitration award if it appears that

 (a) there was an evident miscalculation of figures or an evident mistake in the description of any person or property referred to in the award;

 (b) the arbitrators' award is based on a matter not submitted to them, if the award can be corrected without affecting the merits of the award upon the issues submitted; or

 (c) the award is imperfect as to form.

Utah Code Ann. § 78–31a–15.

Under the Federal Arbitration Act, the court may modify an arbitration award:

 (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

 (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

 (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11.

A court may vacate an arbitration award under the Utah Arbitration Act if it appears that

 (a) the award was procured by corruption, fraud, or other undue means;

 (b) an arbitrator, appointed as a neutral, showed partiality, or an arbitrator was guilty of misconduct that prejudiced the rights of any party;

 (c) the arbitrators exceeded their powers;

 (d) the arbitrators refused to postpone the hearing upon specific cause shown, refused to hear evidence material to the controversy, or otherwise conducted the hearing to the substantial prejudice of the rights of a party; or

 (e) there was no arbitration agreement between the parties to the arbitration proceeding.

Utah Code Ann. § 78–31a–14.

A court may vacate an arbitration award under the Federal Arbitration Act:

 (a) Where the award was procured by corruption, fraud, or undue means.

 (b) Where there was evident partiality or corruption in the arbitrators, or either of them.

 (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

 (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.

arbitrator. *See, e.g., id.* at 1256–57. In such a case, evidence extrinsic to the arbitration itself must be presented to the trial court and findings of fact are indeed appropriate.[7] In this case, however, the claims before the trial court were that the arbitrator (i) exceeded his authority, (ii) made an evident material miscalculation, (iii) manifestly disregarded the law, and (iv) made an award which violated public policy. None of these grounds requires an examination of any facts outside those established by the arbitration award and the memorandum of agreement. Thus, in entering findings of fact in this case, the trial court simply substituted its judgment for that of the arbitrator. This is precisely what a court reviewing an arbitration award may not do. Therefore, we review the trial court's conclusions of law under the correction-of-error standard and ignore the "findings of fact" as inappropriately entered.

All four of the grounds for vacating or modifying the arbitration award urged upon the trial court by Buzas Baseball are based on the underlying factual dispute regarding the alleged $400,000 over-award. Because we hold that the trial court erred by substituting its judgment for that of the arbitration panel when it determined that there was a $400,000 over-award, strictly speaking, we need not reach the merits of Buzas Baseball's arguments regarding the grounds for overturning or modifying arbitration awards. However, we take the opportunity presented to provide guidance to the trial court on remand and to educate the bar on an issue about which we have said little. We note that the law in this area is well settled in other jurisdictions, and we simply set forth the applicable law and show how each ground argued by Buzas Baseball would not support overturning or modifying the award made in this case.

■ We now consider in turn each ground put forth by Buzas Baseball for vacating or modifying the arbitration award. We consider each ground in turn. The first

ground the trial court relied upon—arbitrators exceeding their powers—is a statutory ground for vacating an arbitration award. Utah Code Ann. § 78–31a–14(c). Generally, to find that an arbitrator has exceeded his authority, a court must review the submission agreement and determine whether the arbitrator's award covers areas not contemplated by the submission agreement. "It is '... fundamental that the authority of the arbitrator springs from the agreement to arbitrate." *Swift Indus., Inc. v. Botany Indus., Inc.,* 466 F.2d 1125, 1131 (3d Cir.1972); *see also Western Elec. Co. v. Communications Wkrs. of Am.,* 450 F.Supp. 876, 881 (E.D.N.Y.1978) ("The powers of an arbitrator are defined by agreement of the parties: the question they submit both establishes and limits the arbitrator's jurisdiction. It is the reviewing court's duty [under the exceeding authority test] to determine whether the arbitrator has acted within that jurisdiction.").

■ Buzas Baseball, however, argues that the arbitration panel exceeded its authority by awarding a double recovery and that under the statute the trial court was correct in setting aside the alleged $400,000 over-award. Buzas cites *Eljer Manufacturing, Inc. v. Kowin Development Corp.,* 14 F.3d 1250 (7th Cir.1994), for the proposition that a double recovery may amount to the arbitrator's exceeding his authority. However, *Eljer* simply does not support that proposition. In *Eljer,* the court vacated that portion of an arbitration award which purported to determine a dispute between Eljer and a third party not subject to the arbitration agreement. *Id.* at 1256–57. The proper test under the exceeding authority ground is "whether the arbitrator exceeded the powers delegated to him by the parties." *Id.* at 1256. The memorandum of agreement clearly contemplates that the arbitration panel would determine the just and reasonable compensation due to the Trappers for the drafting of their territory and the amount of predraft damages, if any, such as the loss of

---

7. We note that even in the context of deciding the arbitrability of a dispute, an evidentiary hearing is not required until the party requesting the hearing makes a showing "that disputed factual questions going to the legal issue of arbitrability exist[]." *Commerce Park v. Mardian Constr. Co.,* 729 F.2d 334, 340 (5th Cir.1984). In this case, Buzas Baseball would have had to make a showing that there were disputed factual issues going to the enforceability of the arbitration award before an evidentiary hearing and findings of fact would have been appropriate.

the Trappers' franchise. This is precisely the determination made by the panel, and it in no way exceeded its authority under the agreement.

■ There is one limited circumstance in which courts have found that an error in an award may amount to an arbitrator's exceeding his authority. If an award is "without foundation in reason or fact," the arbitrator may be found to have exceeded his authority. *Brotherhood of R.R. Trainmen v. Central of Ga. Ry.*, 415 F.2d 403, 411–12 (5th Cir.1969); *see also Swift Indus.*, 466 F.2d at 1134 (holding that arbitrator exceeded authority by requiring posting of bond not provided for in arbitration agreement); *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 300 (2d Cir.1963) (holding that arbitrator exceeded authority by determining obligations of corporation clearly not party to arbitration). This is sometimes referred to as the "irrationality principle." *Swift Indus.*, 466 F.2d at 1134. The assumption is that the parties, by their agreement to arbitrate, have given the arbitrator the authority to decide their dispute on a rational basis. Thus, under this principle, an arbitrator has not exceeded his authority "unless [the award] is 'completely irrational.' " *Id.* at 1131 (citing *Lentine v. Fundaro*, 29 N.Y.2d 382, 328 N.Y.S.2d 418, 278 N.E.2d 633 (1972)). In other words, "an award may not stand if it does not meet the test of fundamental rationality." *Id.*

■ However, in considering this type of exceeding authority, courts must "approach this allegation cautiously, for, although the complete irrationality of an award is a basis for setting it aside, the irrationality principle must be applied with a view to the narrow scope of review in arbitration cases." *Id.* at 1134. In a case with claims remarkably similar to those made by Buzas Baseball here, the Alaska Supreme Court rejected the claim that a "double counting" amounted to the arbitrators' exceeding their authority. *Anchorage Med. & Surgical Clinic v. James*, 555 P.2d 1320, 1323 (Alaska 1976). In *James*, the court held that the test for determining when an erroneous award would support a finding that the arbitrator exceeded his authority is "whether reasonable minds could agree that ... [the award] was not possible under a fair interpretation of the [evidence.]" *Id.*

In this case, the arbitrator's award was clearly rational. Under the irrationality principle outlined above, the only basis for the trial court to have invalidated the panel's award would have been if all evidence presented on the issue of valuation had included both territory and franchise values. However, the record in this case indicates that there was evidence before the arbitration panel, relied upon in Chairman Nicolau's opinion, of a $4 million arbitration award to the Denver Zephyrs *solely for their Denver territory.* Thus the panel's award cannot be said to be irrational or utterly lacking in evidentiary support, and thus the trial court erred in finding that the arbitrators had exceeded their authority.

■ The second ground for overturning the arbitrator's award urged upon the court by Buzas Baseball is that the alleged over-award represents an evident material miscalculation. Evident miscalculation is a statutory ground for modifying an arbitration award. Utah Code Ann. § 78–31a–15(a). However, "[r]eceipt of less than one requests in an arbitration proceeding does not, standing alone, constitute a miscalculation." *McIlroy v. PaineWebber, Inc.*, 989 F.2d 817, 821 (5th Cir.1993). There is nothing on the face of this award to indicate that the arbitration panel miscalculated the damages. In this case, the arbitrator had "a wealth of data from which to calculate an appropriate award." *Id.* Buzas Baseball's claim that the overaward is a material miscalculation simply amounts to a claim that Buzas disagrees with the panel's assessment of the evidence. " 'When ... parties agree[ ] to arbitration, they agree[ ] to accept whatever reasonable uncertainties might arise from the process.' " *Id.* (quoting *Raiford v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 1410, 1413 (11th Cir.1990)). The alleged over-award in this case does not amount to a material miscalculation.

■ The third ground for overturning the arbitration award urged upon the court by Buzas Baseball is manifest disregard of

the law. Buzas Baseball claims that the alleged over-award, amounting to a double recovery, was made in manifest disregard of the law prohibiting double recoveries. Manifest disregard of the law is a judicially created doctrine stemming from the exceeding authority statutory ground.[8] *See Wilko v. Swan*, 346 U.S. 427, 436–37, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953) ("[T]he interpretations of the law by the arbitrators[,] *in contrast to manifest disregard* [,] are not subject ... to judicial review for error...." (emphasis added)); *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.1960). If arbitrators manifestly disregard the law in making their award, they can be said to have exceeded their authority. However, "manifest disregard" is much more than mere error as to the law. As the Second Circuit Court of Appeals explained in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930 (2d Cir.1986):

> Although the bounds of this ground have never been defined, it clearly means more than error or misunderstanding with respect to the law. The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator. Moreover, the term "disregard" implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it.

*Id.* at 933 (citations omitted). In this case, nothing in the record establishes that the arbitrators knew of the rule prohibiting double recovery and disregarded it. Buzas Baseball's claim that the alleged over-award was made in manifest disregard of the law again amounts to nothing more than Buzas Baseball's disagreement with the arbitrator about the value of the Salt Lake territory and the meaning of the evidence adduced by the experts during the arbitration. There is no evidence in the opinion that the panel manifestly disregarded some aspect of the law. The alleged over-award in this case cannot amount to manifest disregard of the

law, and thus the statutory ground of exceeding authority cannot be found in this case.

 The last ground urged upon this court by Buzas Baseball is that the award was made in violation of public policy. Buzas argues that the alleged over-award is in violation of a Utah public policy against double recoveries. Rather than being a statutory ground, the public policy exception is a judicially created ground for vacating an arbitration award. *See Misco*, 484 U.S. at 42, 108 S.Ct. at 373; *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183–84, 76 L.Ed.2d 298 (1983). "The public policy exception is rooted in the common law doctrine of a court's power to refuse to enforce a contract that violates public policy or law." *Seymour v. Blue Cross/Blue Shield*, 988 F.2d 1020, 1023 (10th Cir.1993). However, the court must find a " ' "well-defined and dominant" policy against the [described conduct]' " after a "review of the relevant laws and legal precedents." *Id.* at 1024 (quoting *Misco*, 484 U.S. at 44, 108 S.Ct. at 374). Buzas Baseball's claim amounts, at best, to an allegation that the arbitrator's reliance on the comparable sales figures which included both franchise and territory led to an inflated factual finding. Nothing in this alleged over-award would violate a well-defined and dominant public policy of the State of Utah.

Therefore, none of the statutory or judicially created grounds relied upon by Buzas Baseball for vacating or modifying an arbitration award existed in this case, and the trial court's order vacating and modifying the Trappers' award must be set aside. Further, because we find that no grounds existed for either vacating or modifying the arbitration award, we must confirm the award and hereby do so. *See* Utah Code Ann. § 78–31a–12; 4 Am.Jur.2d *Alternative Dispute Resolution* § 229 (1995) ("[T]he award [must] be confirmed by a court unless it is vacated, modified, or corrected...." ).

Finally, we consider the issue of attorney fees. The Trappers urged the trial court to award them a reasonable attorney fee in defending against Buzas Baseball's motion to vacate or modify the arbitration award. The

---

**8.** We analyze this ground because it was raised by Buzas Baseball and relied upon by the trial court below. However, we reserve the issue of whether this ground is recognized in Utah.

Trappers further ask this court to award them a reasonable attorney fee for pursuing this appeal. We hold that the Trappers may be entitled to their reasonable attorney fees for defending the arbitration award below and remand to the trial court for determination of whether the Trappers are so entitled in light of our opinion today. We further hold that if the Trappers are entitled to their reasonable attorney fees below, they are also entitled to their reasonable attorney fees in bringing this appeal, and we direct the trial court to enter such an award should it award attorney fees below.

We first address the issue of federal preemption before turning to the substantive considerations that should guide trial courts considering an award of attorney fees under the Utah Arbitration Act. Buzas Baseball argued below and to this court that the Trappers are not entitled to a reasonable attorney fee because the Federal Arbitration Act, which does not explicitly provide for attorney fees, preempts the Utah Arbitration Act, which does so provide. *See* Utah Code Ann. § 78–31a–16 ("Costs incurred incident to any motion authorized by this chapter, including a reasonable attorney's fee, ... may be awarded by the court."). The trial court apparently agreed that the federal act preempted the Utah Arbitration Act and thus did not consider the Trappers' claim for attorney fees under the Utah act.[9] We reject Buzas Baseball's preemption argument and reverse the trial court to the extent that it agreed with Buzas Baseball's argument.

In *Volt Information Sciences v. Board of Trustees of Leland Stanford University*, 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), the United States Supreme Court held, "The [Federal Arbitration Act] contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration." *Id.* at 477, 109 S.Ct. at 1255. Thus, state law governing arbitration is preempted only "to the extent it actually conflicts with federal law—that is,

to the extent that it 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)). In *Volt*, the Supreme Court held that the policies of the Federal Arbitration Act were (i) "'to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate,'" and (ii) "to place such agreements ' "upon the same footing as other contracts." '" *Id.* at 478, 109 S.Ct. at 1253 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219–20, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158 (1985); *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974)). There is nothing in these policies which suggests that an award of attorney fees under Utah's act would in any way conflict with federal law. In fact, awards of attorney fees are supportive of the federal statute's policies.

Generally speaking, the Utah Arbitration Act is an enactment of the Uniform Arbitration Act of 1955. 7 U.L.A. 1 (1985 & Supp. 1996). However, the relevant portion of the Utah Arbitration Act provides for attorney fees, which the uniform act does not. Section 78–31a–16 of the Code provides:

> Costs incurred incident to any motion authorized by this chapter, including a reasonable attorney's fee, unless precluded by the arbitration agreement, may be awarded by the court.

Utah Code Ann. § 78–31a–16. Section 14 of the Uniform Act makes no reference to attorney fees, providing only that "[c]osts ... and disbursements may be awarded by the court." Unif. Arbitration Act § 14, 7 U.L.A. 204 (1955). However, this section has been construed by most jurisdictions as permitting an award of attorney fees. *See Canon Sch. Dist. v. W.E.S. Constr. Co.*, 180 Ariz. 148, 882 P.2d 1274, 1279 (1994) (citing *Anchorage Med. & Surgical Clinic v. James*, 555 P.2d 1320, 1324 (Alaska 1976); *County of Clark v.*

---

9. The trial court gave no reason in its order for denying the Trappers' request for a reasonable attorney fee. However, at the hearing on Buzas Baseball's motion to vacate or modify the arbitration award, both parties argued solely the preemption issue. Further, the trial court's conclusion of law that the "substantive [pro]visions of the Federal Arbitration Act 9 U.S.C. § 1, *et seq.* are applicable" appears to provide the only basis for its denial of the Trappers' request for attorney fees.

*Blanchard Constr. Co.*, 98 Nev. 488, 653 P.2d 1217, 1220 (1982); *Wachtel v. Shoney's, Inc.*, 830 S.W.2d 905 (Tenn.Ct.App.1991)). This interpretation has been described as "promot[ing] the public policy of encouraging early payment of valid arbitration awards and ... discourag[ing] nonmeritorious protracted confirmation challenges," *Canon*, 882 P.2d at 1279, values entirely in accordance with the federal statute's policies. In light of the foregoing, we hold that on its face, the Utah provision explicitly granting the · court the authority to award a reasonable attorney fee is not in conflict with the federal law and, therefore, is not preempted.

In considering the attorney fees provision in the Utah Arbitration Act, we note that the grant of authority to award attorney fees is unlike most other grants of such authority by statute in Utah. This is because the Utah Arbitration Act provides no guidance to the court in determining when to award attorney fees, which most Utah statutes do. *Compare* Utah Code Ann. § 78–31a–16 *with id.* § 11–13–29(3) (providing that under Interlocal Cooperation Act, party not accepting offer shall pay reasonable attorney fee if final order is not more favorable than original offer) *and id.* § 13–11–19(5) (granting court authority under Consumer Sales Practices Act to award attorney fees to prevailing party if party bringing claim knew it to be groundless) *and id.* § 30–3–3 (granting court authority in divorce cases to award attorney fees "to enable [a] party to prosecute or defend the action").[10] The lack of any standards governing attorney fee awards in the Utah Arbitration Act raises at least the theoretical potential that a court might award fees in a circumstance where that award would be inconsistent in operation with the policies of the federal act. For that reason, we address its application. However, we cannot anticipate every ruling that a trial court may make, and we recognize that trial courts are granted broad discretion in determining the legal effect of specific facts. *State v. Pena*, 869 P.2d 932, 937 (Utah 1994). We expect that, over time, principles for applying this statute will emerge, which we

will have occasion to address. *Id.* at 938. In the meantime, we address some instances where an award of attorney fees would be inappropriate under the Utah Arbitration Act.

■ In exercising the discretion bestowed by the "may" language of the Utah Arbitration Act, trial courts should look to the policies underlying our statute. For example, in *DeVore*, 884 P.2d at 1251, we said that "the policy of our law favors arbitration as a speedy and inexpensive method of adjudicating disputes." This policy is not inconsistent with the policy underlying the federal act as stated in *Volt*, 489 U.S. at 478, 109 S.Ct. at 1255, and that fact suggests that attorney fee awards consistent with the policy of the Utah act will not run afoul of the federal policies. Moreover, we note that the fact that the Utah Arbitration Act explicitly provides for an award of attorney fees suggests that our policies favor the enforceability of arbitration awards and discourage relitigation of valid awards even more strongly than the federal act, which does not provide for attorney fees. This makes it even clearer that an award of attorney fees which furthers Utah's policies in favor of arbitration will not conflict with the federal act.

Looking to the actual operation of our statute, it is difficult to conceive of an award of attorney fees to a prevailing party which would run afoul of our policies. The only such situation we can imagine would be one where a trial court awarded attorney fees to a party who did not prevail in the litigation or who challenged an award and prevailed only as to some very minor point but lost as to all major points. Such an award of attorney fees would arguably defeat the purposes behind the Utah Arbitration Act because it would not further the goal of discouraging unnecessary relitigation of arbitration awards. We do not mean to read a rigid "prevailing party" requirement into the Utah Arbitration Act's attorney fee provision; we are simply illustrating the scope of the policy underlying our statute—encouraging the enforceability of arbitration awards and discouraging relitigation of matters resolved by

**10.** There are other Utah statutes which provide simply that the court "may" award attorney fees, but we have never interpreted any of them. *See*

Utah Code Ann. §§ 7–1–320, 16–6–69, 20A–1–403, 70C–7–204, 78–23–13, 78–45a–5.

arbitration. *See DeVore,* 884 P.2d at 1251; *Utility Trailer,* 740 P.2d at 1329; *Robinson & Wells,* 669 P.2d at 846.

Returning to the present case, we conclude that an award of attorney fees to the Trappers at the trial court level would appear to have been justified and certainly was not prohibited. Therefore, on remand, the trial court must reconsider the attorney fees issue.

■ Finally, if the trial court determines on remand that the Trappers are entitled to their reasonable attorney fees in defending the arbitration award, they are also entitled to their reasonable attorney fees in bringing this appeal. As noted above, the Utah Arbitration Act provides that the court may award a reasonable attorney fee "incurred incident to any motion authorized by this chapter." In this case, the appeal to this court to correct the errors of the trial court is clearly "incident to" Buzas Baseball's motion to vacate or modify. *See First Southwestern Fin. Servs. v. Sessions,* 875 P.2d 553, 555–56 (Utah 1994) (awarding attorney fees on appeal under statute allowing for attorney fees "in any action brought under this section"). Thus if the Trappers are entitled to their reasonable attorney fees for defending the arbitration award at the trial level, they are also entitled to the fees they have incurred in bringing this appeal to correct the trial court's errors. Should the trial court award such fees on remand, it shall also determine the amount of the Trappers' reasonable attorney fees for this appeal.

In sum, we reverse the trial court's order vacating and modifying the arbitration award, confirm the award, and remand to the trial court for reconsideration of the issue of attorney fees in light of this opinion. Should the trial court determine that the Trappers are entitled to their reasonable attorney fees at the trial level, we further direct the trial court to determine the amount of the Trappers' reasonable attorney fees on this appeal.

STEWART, Associate C.J., and HOWE, DURHAM and RUSSON JJ., concur.