2014 UT App 69

**Mark ZELIG, Plaintiff, Appellee, and Cross-appellant,**

v.

**UINTAH COUNTY, Defendant, Appellant, and Cross-appellee.**

No. 20120885–CA.

Court of Appeals of Utah.

March 27, 2014.

Jonathan A. Stearmer, Jesse C. Trentadue, Salt Lake City, and Britton R. Butterfield, Salt Lake City, Attorneys for Appellant and Cross-appellee.

Bruce H. Shapiro and Andrew M. Wadsworth, Salt Lake City, Attorneys for Appellee and Cross-appellant.

Judge GREGORY K. ORME authored this Memorandum Decision, in which Judge JAMES Z. DAVIS and Senior Judge PAMELA T. GREENWOOD concurred.[1]

---

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

Memorandum Decision

ORME, Judge:

¶ 1 Uintah County appeals from a district court order awarding expert fees, interest, and attorney fees to Dr. Mark Zelig. We vacate the judgment of the district court.

¶ 2 This appeal arises from events that occurred in a case pending before the Eighth District Juvenile Court involving the termination of a mother's parental rights. At some point in the case, her initial choice having stepped aside due to a conflict, the impecunious mother asked the court to appoint Dr. Zelig as an expert custody evaluator. Dr. Zelig provided the court with a copy of his standard contract, along with his curriculum vitae. The juvenile court provided Uintah County with a "Notice of Motion and Opportunity to Object," along with the documents Dr. Zelig submitted. The contract was never signed by Uintah County. When no objections were made, the juvenile court issued an order appointing Dr. Zelig to serve as an expert witness "for and in behalf of [the] mother." This order also provided that "Uintah County shall be responsible for the reasonable expert witness fees of Dr. Mark Zelig, including evaluations of mother, and children as would be helpful to the Court and the parties in dealing with the issues of this case." Without first insisting that Uintah County sign his standard contract, or any other contract for that matter, Dr. Zelig then began serving as an expert and did so through the conclusion of trial.

¶ 3 During the course of his pretrial involvement, Dr. Zelig submitted two comparatively small invoices to Uintah County. At the conclusion of trial, Dr. Zelig submitted a substantially larger invoice to Uintah County for the total cost of his services. Uintah County then filed a motion for a hearing with the juvenile court to determine the reasonableness of Dr. Zelig's expert witness fees. Dr. Zelig had not received notice of the hearing and consequently did not attend.

The juvenile court did not enter an order in the absence of Dr. Zelig.

¶ 4 Dr. Zelig then filed suit against Uintah County in the Third Judicial District Court to recover his expert witness fee, related costs, interest, and attorney fees allegedly owed him under his expert witness contract. Uintah County filed a motion to dismiss or change venue, arguing that the case belonged in the juvenile court. When this motion was denied, Uintah County filed a request for a hearing before the juvenile court seeking to have the issue of the reasonableness of Dr. Zelig's fees heard by the same court that appointed Dr. Zelig and presided over the trial in which he testified. The juvenile court expressed its reluctance to wade in, given the pending district court proceeding.

¶ 5 The district court ordered Uintah County to pay Dr. Zelig's attorney fees attributable to resisting the motion filed with the juvenile court, concluding that the motion was a violation of the district court's ruling that venue was proper in the Third District Court. The district court also ruled in Dr. Zelig's favor on all of his contractual and quasi-contractual claims and awarded him his expert fees and costs, prejudgment interest, and attorney fees. The award totaled $91,058.52.

¶ 6 Uintah County contends that the juvenile court had sole responsibility for setting the amount of Dr. Zelig's reasonable fee and that the district court thus lacked jurisdiction over the dispute—at least until that important step had been taken.[2] We agree.

¶ 7 Section 78B–1–151 of the Utah Code provides that a "court may appoint any expert witness agreed upon by the parties or of its own selection. The court shall inform the expert of required duties in writing and a copy shall be filed with the court record." Utah Code Ann. § 78B–1–151(1) (LexisNexis 2012).[3] *Cf. id.* § 78A–6–515 (specifying guidelines for juvenile courts to follow when

2. Uintah County essentially conceded at oral argument before this court that if the juvenile court determined the amount of the reasonable fee awardable to Dr. Zelig and Uintah County refused to pay it, a collection action in district court might then be appropriate.

3. Because the provisions in effect at the relevant time do not differ in any way material to our analysis from the statutory provisions now in effect, we cite the current version of the Utah Code Annotated as a convenience to the reader.

appointing mental health therapists). This was done, albeit in rather sparse terms, in the "Order Appointing Expert Witness Custody Evaluator," in which the juvenile court appointed Dr. Zelig and recited that he would conduct "evaluations of mother, and children as would be helpful to the Court and the parties in dealing with the issues of this case." The same section of the Utah Code also provides that the "court shall determine the reasonable compensation of the expert and order payment." *Id.* § 78B–1–151(3). This section fully applies to juvenile courts. As recognized in *In re R.M.*, 2001 UT App 403, 38 P.3d 1006, "The plain language of [section 78B–1–151(3)] grants the juvenile court authority to determine the amount of the expert witness fee and the party responsible for paying the fee." *Id.* ¶ 11. Therefore, we conclude that the juvenile court—the court that heard the underlying case and appointed the expert in the first place—was the appropriate court to determine the reasonableness of the work Dr. Zelig performed, set his fee, and determine who was responsible for payment.

■ ¶ 8 Because we vacate the district court's judgment and conclude that the case was never properly before it, we need not reach the other issues that Uintah County raised on appeal. "However, we take the opportunity presented to provide guidance" to the juvenile court in its determination of the reasonableness of Dr. Zelig's fees. *See Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 949 (Utah 1996). Although we conclude in this case that it is ultimately the juvenile court, and not Dr. Zelig's contract form, that "determine[s] the reasonable compensation of the expert," *see* Utah Code Ann. § 78B–1–151(3), we note that the fees identified in the contract form are an appropriate starting point for the juvenile court's deliberation. This is especially true considering that, while the contract was never signed and Dr. Zelig conceded that no contract was entered, both the juvenile court and Uintah County had ready access to Dr. Zelig's contract form and thereby knew the customary rate he charged for his services. Uintah County had the opportunity to object to his appointment, but it objected neither to his appointment nor to

his stated hourly rate. And in appointing Dr. Zelig, the juvenile court did not take the occasion to disapprove or even question his stated hourly rate.

¶ 9 We conclude that Utah Code section 78B–1–151 grants the juvenile court the authority to determine the amount and reasonableness of the expert witness fee in this case. We therefore also conclude that the instant case, at the time and in the posture it was brought, was never properly before the district court. We accordingly vacate its judgment.